588 So.2d 345 (1991)
STATE of Louisiana
v.
Wayne LANDRY.
No. 91-K-0162.
Supreme Court of Louisiana.
October 21, 1991.
Rehearing Denied November 21, 1991.
William J. Guste, Jr., Atty. Gen., Harry F. Connick, Dist. Atty., Charmagne Padua, Asst. Dist. Atty., for applicant.
Darryl A. Derbigny, New Orleans, for respondent.
LEMMON, Justice.
The principal issue in this case involves the suppression of evidence seized in a search of defendant's person incidental to an arrest after a routine traffic violation stop of the automobile in which defendant was a passenger.

I.
Defendant was a passenger in an automobile traveling in a New Orleans residential neighborhood at 1:00 a.m. when two police officers stopped the driver for exceeding the speed limit. The officers ordered both of the occupants out of the car as a normal safety procedure under the circumstances. While one officer checked the driver's license of the driver and his proof of ownership of the vehicle, the other officer asked defendant for identification, and defendant produced his driver's license. The officer then ran a computer check for warrants in defendant's name and determined that there was an outstanding attachment. Following routine police procedures, the officer arrested defendant on the basis of the attachment.
Pursuant to the full custody arrest, the officer searched defendant and discovered cocaine on defendant's person. United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); compare State v. Breaux, 329 So.2d 696 (La.1986). The officer then arrested defendant for possession of cocaine.
Prior to trial defendant moved to suppress the evidence discovered during the search of his person on the basis that the officer had no justification for ordering a *346 passenger from the car stopped for a routine traffic violation. The trial judge denied the motion, noting that the officer would have been unwise to leave anyone in the car when he ordered the driver to get out. Defendant then entered a conditional guilty plea, reserving his right to appeal on the suppression issue.
The court of appeal, in an unpublished opinion by a divided panel, reversed the conviction and suppressed the evidence. 571 So.2d 914. Relying on State v. Williams, 366 So.2d 1369 (La.1978), the court held that the officer's ordering the passenger out of the car was an illegal seizure of his person. The court noted that the Williams decision had refused to extend to a passenger in an automobile the rationale of Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), that a police officer may be justified for safety reasons in ordering a driver from the vehicle which has been stopped for a routine traffic violation.
We granted certiorari to consider the applicability and continued viability of the Williams decision. 577 So.2d 4.

II.
In Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), two officers stopped the defendant's vehicle to issue a traffic summons for driving with an expired license plate. One officer asked the defendant (the driver and only occupant) to step out of the automobile. As the defendant alighted from the vehicle, the officer noticed a bulge under the defendant's jacket. Suspecting that the bulge might be a weapon, the officer frisked the defendant and discovered that the bulge was indeed a loaded revolver.
Reversing the state court's decision that the officer's ordering the defendant out of the car was an impermissible seizure of the person, the Court held that "once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." Id. at 111 n. 6, 98 S.Ct. at 333 n. 6. The Court observed that the inquiry in any Fourth Amendment analysis is whether the search or seizure was reasonable under all of the circumstances, stating that the determination of reasonableness requires a balancing of the public interest and the individual's right to be free from arbitrary governmental interference.
Addressing the public interest, the Court determined that the officer's ordering the traffic violator out of his car in order to establish a face-to-face observation diminished the substantial possibility that the driver may make unobserved movements and reduced the likelihood of an attack on the officer. Then turning to the defendant's privacy interest, the Court reasoned that because the driver of the vehicle had been lawfully detained, the officer's ordering the driver out of the car was an incremental intrusion into the driver's personal liberty which "can only be described as `de minimis.'" Id. at 111, 98 S.Ct. at 333. The Court concluded that this de minimis intrusion could not prevail over the justified concern for the officer's safety under the circumstances.
In State v. Williams, 366 So.2d 1369 (La.1978), police officers stopped a vehicle which had no tail lights and ordered the two occupants out of the vehicle. As Willis, the passenger, was exiting from the car, the officer noticed a sawed-off shotgun between the front seat and the passenger side door. The officers immediately arrested both occupants for possession of the illegal weapon.
The majority at the outset questioned whether an officer who makes a routine traffic stop is placed in serious danger and whether the officer's ordering the occupants out of the car significantly enhances the officer's safety. Focusing on the case before the court, the majority distinguished the nature of the intrusion into the driver's privacy from the intrusion into the passenger's privacy. According to the majority, while the officer's ordering the driver out of the car after legally detaining him because of the traffic violation may have been only an incremental intrusion into his privacy, there was no justification to detain the passenger (who had not committed a traffic offense), and ordering him out of *347 the car was not incremental to legal detention, but was independent of any justified intrusion into the passenger's privacy. Concluding that the intrusion was greater for the passenger and that the concern for the officer's safety did not outweigh the passenger's individual privacy interests, the majority held that the Mimms rationale does not extend to passengers in an automobile stopped for a traffic violation.
In the present case we decline to adhere to the view of the Williams majority that stops for traffic violations necessarily involve less danger to police officers than other types of confrontations. See United States v. Robinson, 414 U.S. 218, 234, 94 S.Ct. 467, 476, 38 L.Ed.2d 427 (1973). A police officer's stopping a vehicle for a routine traffic violation sets up the possibility of a significant confrontational situation. The motorist may be driving a stolen vehicle, may be transporting contraband, may be in possession of illegal weapons, or may be involved in other criminal activity. The likelihood of danger may also be greater during darkness and in early morning hours, or when there are a number of occupants. A police officer who stops a vehicle for a routine traffic offense may be exposed, according to the circumstances, to a significant risk of attack, and concern for the safety of the officer may be a legitimate and weighty justification for reasonable intrusions into the privacy interests of the occupants of the stopped vehicle.
Furthermore, as shown by the facts in Williams, either the driver or the passenger of a stopped automobile can present a significant threat to the safety of the stopping officer. Any occupant of a vehicle may have access to a weapon or may have the propensity to use a weapon to escape the consequences of the confrontation. Ordering a passenger out of the vehicle not only places him in the view of the officer, but also distances him from access to weapons. The justification for ordering the passenger out of the vehicle is just as compelling as the justification for ordering the driver out. Under the circumstances of the present case, in which two men were stopped in a speeding car in the early morning hours, the officers' concern for their own safety justified their ordering both occupants out of the car.
On the other side of the balancing analysis, the intrusion into the passenger's privacy, while not incremental to a detention based on criminal behavior, was still de minimis. Although the passenger was not detained because of a traffic violation, he was stopped as a matter of necessity when the vehicle was stopped for the violation. If the passenger desired to remain with the car during the time necessary for the officer to issue a ticket to the driver, the officer's merely removing the passenger from the vehicle during the brief period of detention of the driver constituted more of a slight inconvenience to the passenger than a serious intrusion upon his privacy interests.
After balancing the safety and the privacy interests in the present case, we conclude that the officer had a right to order defendant to disembark from the vehicle in order to ensure the officer's safety. Accordingly, we overrule State v. Williams, 366 So.2d 1369 (La.1978), to the extent that it conflicts with this decision.

III.
Our conclusion as to the legality of the officer's ordering defendant out of the car does not end the inquiry into the validity of the search of defendant's person. Unlike the Mimms case the officer in this case did not have probable cause (arising in the Mimms case from the bulge under the accused's jacket) to search defendant as soon as he alighted from the car. And unlike the Williams case the officer in this case did not see contraband in plain view as soon as defendant left his seat in the car. Here, the search which produced the contraband was incidental to an arrest which occurred only after the officer inquired into defendant's identity and ran his name through the computer. The suppression issue therefore turns on the legality of the officer's request for identification.
Defendant contends that he did not willingly furnish identification to the officer, but rather that he was seized when the officer ordered him out of the car and that he continued under the compulsion of the *348 seizure when he responded to the officer's request for identification.
Assuming, without deciding, that defendant had been seized at the time of the request for identification, we conclude that the request for identification was a limited additional intrusion into defendant's privacy that was not unreasonable under the circumstances. When the officers ordered defendant and the driver from the car in order to establish a face-to-face situation, the officers had a further security interest in determining whether the men with whom they were dealing were dangerous characters. While the request for information (or perhaps even the removal from the car) may not have been reasonable if the officers had stopped a lone person on a college campus in broad daylight, the circumstances of the traffic stop in the present case made the request for identification from the two men reasonable. And the document obtained by the simple request for identification was one which is commonly used for identification purposes and one in which a person has little expectation of privacy.
Moreover, the officer did not himself go into defendant's wallet to obtain his name and driver's license number, but rather obtained the information in a reasonable manner by a simple request for identification. The record does not suggest that the request was made for the purpose of embarrassment or harassment, but only for the purpose of determining information as to the identity of the men involved in this lonesome confrontation in the dark early morning hours. Under these overall circumstances, this limited additional intrusion into defendant's privacy does not taint the information which was obtained and which led to the foundation for defendant's arrest.
Accordingly, the judgment of the court of appeal is reversed, the motion to suppress is denied, and the case is remanded for further proceedings.
CALOGERO, C.J., concurs and assigns reasons.
DENNIS, J., dissents with reasons.
WATSON, J., dissents for the reasons assigned by DENNIS, J.
CALOGERO, Chief Justice, concurring.
I concur in the result, but for reasons other than stated by the majority. I agree that routine traffic stops do not necessarily pose less danger to police officers than other kinds of confrontations. If the officers in this case had articulated any particularized basis for their safety concerns, I would readily join other courts approving the limited seizure of passengers in a vehicle stopped for a routine traffic infraction. See, e.g., State v. Willis, 320 N.W.2d 726 (Minn.1982). The record, however, contains only the testimony of a single officer that he and his partner "always take ... both individuals outside of the car [for their safety] ...," and that they "always identify everybody that [we] stop...." This testimony does not provide concrete evidence of the dangers generally posed to police officers by passengers of automobiles to police officers that would justify overruling State v. Williams, 366 So.2d 1369 (La.1979), or departing from settled law that police officers need either reasonable suspicion or probable cause before they may approach an individual under circumstances in which no reasonable person would feel "free to decline the officers' requests or otherwise terminate the encounter." Florida v. Bostick, ___ U.S. ___, 111 S.Ct. 2382, 2387, 115 L.Ed.2d 389 (1991). I am especially reluctant to overrule Williams on the basis of a six-page hearing transcript in light of the United States Supreme Court's concession, less than ten years after it wrote Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), that "[k]eeping the driver of a vehicle in the car during a routine traffic stop is probably the typical police practice." New York v. Class, 475 U.S. 106, 106 S.Ct. 960, 966-67, 89 L.Ed.2d 81 (1986).
Nevertheless, the record shows that the officers placed the defendant under arrest on an attachment from municipal court before they searched him and found the packet of cocaine. While I would not read a *349 "simple request" into the officer's plain statement that "upon getting Mr. Landry's name ...," he checked with the police computer for outstanding warrants, the record contains no affirmative evidence that the officers deliberately exploited their initial seizure of the defendant to identify him for purposes of furthering an ongoing investigation. Compare United States v. Johns, 891 F.2d 243 (9th Cir.1989). Given the apparently fortuitous discovery of the municipal court attachment, I believe the lawful arrest and incidental search of the defendant may well have constituted an intervening circumstance which broke the causal connection between the officer's violation of his privacy rights, stemming from the valid stop of the vehicle for a traffic infraction committed by the driver, and the discovery of the contraband. Cf. Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).
DENNIS, Justice, dissenting.
I respectfully dissent. In an attempt to overrule precedent with which it disagrees, the majority unnecessarily reads the U.S. Supreme Court's decision in Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), broadly to support its holding today. However, the reliance placed on Mimms is clearly misplaced. Mimms is distinguishable from the case before this court. The decision therein only applied to the driver of the vehicle stopped. It was not necessary to reach the issue of whether the passenger could be ordered out of the car. Secondly, the state in Mimms clearly presented evidence (no matter how compelling that evidence actually was, see Justice Stevens, dissenting, 434 U.S. at 115, 98 S.Ct. at 335), that safety concerns justified ordering the driver out of the car.
However, we may look to the court's rationale in Mimms to determine the proper analysis to apply under the Fourth Amendment. In New York v. Class, 475 U.S. 106, 117-18, 106 S.Ct. 960, 967-68, 89 L.Ed.2d 81 (1986), the court summarized the requirements of Mimms: (1) the safety of the officers was served by the governmental intrusions, (2) the intrusion was minimal, and (3) the search stemmed from some probable cause focusing suspicion on the individual affected by the search.
Here, as noted by the concurrence, the State made no showing that the safety of the police officers was served by ordering the defendant out of the car. The arresting officer testified that the defendant was ordered out of the car as a matter of course. We recognize that there will be circumstances that give rise to concern on the part of investigating officers which may demand greater invasions on personal liberty of the drivers and passengers of an automobile stopped. And, the courts should treat with generous consideration the concern of police officers for their own safety in potentially dangerous situations. However, in the present case there was no attempt on the part of the State to show that there was a genuine concern by the officers for their own safety. Under Mimms, the State is not required to show that the officers had probable cause to believe that their safety was in danger, but the State must show that the officers had a justifiable or reasonable suspicion. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
As to the second and third issues, I agree with the U.S. Supreme Court in Mimms and the majority opinion that ordering a driver or passenger out of a court is generally a minimal intrusion. However, as noted by this court in State v. Williams, 366 So.2d 1369 (La.1978):
"Certainly the passenger has a higher expectation of privacy than the driver, because the passenger plays no part in the routine traffic infraction and has reason to suppose that any exchange with the authorities will be conducted by the driver alone. To give the police officer the discretion to order the passenger from the automobile without requiring any explanation of the officer's actions... is to abandon the requirement of individualized inquiry into the reasons for an intrusion of the right to privacy secured by Article 1, § 5 of the Louisiana Constitution." Id., at 1374.
*350 This rationale leads us finally into the last requirement of Mimms that the search stem from some probable cause focusing suspicion on the individual affected by the search. Here, as in Williams, the record reflects that the defendant committed no infraction, broke no law, and otherwise gave the officers no reason to believe that he committed, was about to commit, or was in the process of committing a crime. Accordingly, only one of the prongs of Mimms was present in this case, and federal jurisprudence interpreting the Fourth Amendment alone dictates our affirming the court of appeal's decision.
As a final matter, the majority ignores well-established precedent interpreting our state constitution that Article 1, § 5 does not merely duplicate the Fourth Amendment. "It represents a conscious choice by the citizens of Louisiana to give a `higher standard of individual liberty than that afforded by the jurisprudence interpreting the federal constitution.'" State v. Church, 538 So.2d 993 (La.1989). It is argued that this court's opinion in State v. Williams prohibits the use of the evidence seized herein, and thus the majority finds it necessary to address Williams. However, since the majority does not comply with the lesser requirements of the Fourth Amendment under Mimms, there was no reason to reach the alleged broader state constitutional protections under Williams. The majority unnecessarily casts doubt on precedent of this court without first meeting the arguably lesser more conservative requirements under the Fourth Amendment.
Since the arresting officers made an unconstitutional seizure of the person when they ordered the defendant out of the car, the next logical step would be to determine whether there was an intervening factor which attenuated the unconstitutional seizure. Unlike the concurrence, I do not believe that the record shows the interrogation of the defendant to have been "fortuitous" and thus cannot agree that the arrest was valid on those grounds. However, I believe that it would be appropriate to remand the matter for a determination under Florida v. Bostick, ___ U.S. ___, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991), of whether the defendant felt compelled to provide the officers the information or he voluntarily consented to provide the information. If the State can show that the information was voluntarily obtained, the arrest may be valid.
For these reasons, I respectfully dissent.