684 So.2d 567 (1996)
STATE of Louisiana, Plaintiff-Appellee,
v.
Demond Issac PURVIS, Defendant-Appellant.
No. 96-787.
Court of Appeal of Louisiana, Third Circuit.
December 11, 1996.
*568 Glenn G. Cortell, Charles F. Wagner, District Attorney, for State of Louisiana.
Michael Brewer, Alexandria, for Demond Issac Purvis.
Before THIBODEAUX, PETERS, and GREMILLION, JJ.
GREMILLION, Judge.
Defendant, Demond Issac Purvis, was charged by bill of information on March 20, 1995, with possession of between 28 to 200 grams of a controlled dangerous substance, a violation of La.R.S. 40:967 F(1)(a). Defendant waived formal arraignment and entered a plea of not guilty on April 28, 1995. A jury convicted defendant on December 13, 1995. On March 1, 1996, defendant was sentenced to seven years at hard labor without benefit of parole. Defendant now appeals his conviction, alleging that the trial court erred in denying his motion to suppress evidence.

FACTS
On February 9, 1995, at approximately 7:00 p.m., Officers Robert Strother and Daniel Joffrion of the Alexandria Police Department were patrolling the twelve hundred block of Magnolia Street, a high crime drug area. They observed defendant and Charles Dupars, a/k/a Willie Jenkins, enter a taxicab. Officer Strother recognized defendant because he had arrested him before. The officers followed the cab because they thought it was unusual that defendant was outside of his known area and they had never seen him in a cab before. The officers turned onto a side road and Officer Joffrion got out of the patrol car and walked up the street in order to observe the cab. Officer Joffrion saw two black males get into the cab. As the officers continued to follow the cab, they noticed the light on its license plate was not shining. *569 Based on their previous history with defendant, they called for backup units before they stopped the cab. They then stopped the cab for the traffic violation.
As Officer Strother was talking to the cab driver, Walter Tiffy, at the rear of the vehicle, he observed that Dupars was staring at him and sweating. Meanwhile, Officer Joffrion was observing the defendant. Officer Strother asked Dupars to step out of the vehicle. According to Officer Strother, Dupars was highly nervous and was shaking in a manner similar to a semi-epileptic seizure. Officer Strother then conducted a pat down of Dupars. As he was leaning down to frisk Dupars, he saw a plastic bag containing a white object in the pocket of Dupars' flight jacket which was later determined to be crack cocaine. Officer Strother asked Dupars who owned the contraband. Dupars told him it belonged to defendant who was still in the cab. Officer Joffrion then searched defendant, but did not discover any other contraband. Officer Strother arrested Dupars and defendant for possession of crack cocaine.

ASSIGNMENT OF ERROR
Defendant contends the trial court erred in denying his motion to suppress the evidence. He first argues the officers had no legal basis to stop the taxicab. He contends the fact that the license plate light was dim from a distance of ninety feet did not violate La.R.S. 32:304(C) which requires that the license plate be visible from a distance of fifty feet to the rear. The defendant further asserts that Officer Strother conceded he could possibly read the numbers on the license plate at the point when he activated his blue lights and could read the license plate when he stopped the vehicle. Under Article 1, § 5 of the Louisiana Constitution, any party adversely affected by an illegal search or seizure, has standing to raise the illegality of the search. State v. Gibson, 391 So.2d 421 (La.1980); State v. Owen, 453 So.2d 1202 (La.1984); State v. Smith, 546 So.2d 538 (La.App. 1 Cir.1989), writ denied, 552 So.2d 393 (La.1989). Therefore, defendant has standing to raise a possible violation of the constitutional rights of the cab driver.
When the trial court issues a ruling on a defendant's motion to suppress, the appellate court looks at the totality of the evidence presented at the hearing on the motion to suppress. The appellate court should not overturn a ruling unless the trial court's conclusions are not supported by the evidence or there exists a palpable or obvious abuse of discretion. State v. Burkhalter, 428 So.2d 449 (La.1983), and State v. Rios, 528 So.2d 163 (La.App. 3 Cir.), writ denied, 530 So.2d 83 (La.1988).
An individual cannot be stopped in his automobile by a police officer, without a warrant, unless the officer has a reasonable suspicion that the individual has committed, is committing, or is about to commit a criminal offense, including the violation of a traffic regulation. Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660, (1979); State v. Matthews, 366 So.2d 1348 (La.1978); State v. Dillon, 95-884 (La.App. 3 Cir. 1/31/96); 670 So.2d 278; State v. Fisher, 94-603 (La.App. 3 Cir. 11/2/94); 649 So.2d 604, writ denied, 94-2930 (La.4/7/95); 652 So.2d 1344. Officer Strother testified at the suppression hearing that he was about ninety feet away from the taxicab when he first observed the traffic violation. Officer Joffrion testified the license plate light was burning but the light had been painted yellow and was so dim it could not be seen. The question of whether or not the light was visible from a distance of ninety feet or fifty feet is irrelevant since the trial judge necessarily must have considered the initial stop to be legally valid and determined the officers had reasonable suspicion that the taxicab driver was violating a traffic regulation. We agree. La.R.S. 32:304(C) provides in pertinent part:
Either a tail lamp or a separate lamp shall be so constructed and placed as to illuminate with a white light the rear registration plate and render it clearly legible from a distance of 50 feet to the rear. (emphasis added).
The trial court gave credence to the testimony of the officers. It is within the trial court's discretion to make factual determinations based upon the credibility of the witnesses. *570 Those determinations are not to be disturbed on appeal absent a showing of clear abuse of discretion. State v. Robertson, 421 So.2d 843 (La.1982); Fisher, 649 So.2d 604. We hold there was a technical violation, however slight, of La.R.S. 32:304(C) and, therefore, find the trial court did not commit error in holding the stop to be constitutionally valid.
Defendant next contends the officers were unjustified in removing Dupars from the taxicab. As stated previously, Article 1, § 5 of the Louisiana Constitution allows any party adversely affected by an illegal search or seizure to raise the illegality of the search. Thus, defendant has standing to raise a possible violation of Dupars' constitutional rights because the discovery of the contraband in his possession led to defendant's arrest. Defendant urges that while the officers' stated reason for removing Dupars was for the purpose of identification, the fact that the officers did not request identification from Dupars suggests the officers' true intent was to search the occupants of the vehicle. Defendant contends State v. Landry, 588 So.2d 345 (La.1991) is the applicable case law.
In Landry, the Louisiana Supreme Court ruled that a police officer has the authority to order a passenger out of a vehicle while speaking with the driver. In reaching its decision, the court balanced the intrusion into the passenger's privacy against the safety concerns of the officer and found the intrusion to be minimal. The court further held that an officer can request identification from the passenger. In its holding, the court plainly states that safety concerns justify an officer in removing a passenger from a vehicle during a traffic stop:
[E]ither the driver or the passenger of a stopped automobile can present a significant threat to the safety of the stopping officer. Any occupant of a vehicle may have access to a weapon or may have the propensity to use a weapon to escape the consequences of the confrontation. Ordering a passenger out of the vehicle not only places him in the view of the officer, but also distances him from access to weapons. The justification for ordering the passenger out of the vehicle is just as compelling as the justification for ordering the driver out.
Id. at 347.
At the suppression hearing, Officer Strother testified that Dupars' nervousness, shaking, and sweating, coupled with his association with defendant, led him to ask Dupars to exit the taxicab for safety reasons. While Officer Strother's removal of Dupars from the vehicle is allowed under Landry, the warrantless seizure must still satisfy the dictates of the Fourth Amendment.
The trial court's determination that after Dupars stepped out of the cab, Officer Strother could see the contraband in "plain view" because it was "protruding" from the jacket pocket is not supported by the record. The trial court concluded:
Officer Strother decided to ask the man to exit the taxi and could see the man was actually shaking. Strother could also see, in plain view, a plastic bag containing white powder, protruding from the pocket of the man's jacket. (Emphasis added.)
However, Officer Strother testified at the suppression hearing and at trial that he saw the contraband only after he began to frisk Dupars. He stated that when he leaned over the left side of Dupars' body to pat down his leg, he could see in the jacket and that was when he saw the plastic bag containing the white object. He further testified that the plastic bag wasn't sticking out of Dupars' pocket, but, because the pockets of the leather jacket were not deep, they were open and he could see in them.
If the officer had actually seen the contraband protruding from Dupars' pocket in plain view, as the trial court concluded, the evidence would have been admissible under the plain view exception to the warrant requirement. However, because Officer Strother testified he saw the contraband as he was frisking Dupars, the plain view doctrine would apply only if the frisk itself was lawful. For the plain view doctrine to apply in the present case, the state must show a prior justification for police intrusion into the protected area. State v. LaBranch, 541 So.2d 256 (La.App. 4 Cir.), writ denied, 546 *571 So.2d 1211 (La.1989). In short, Officer Strother must have been in a lawful position when he viewed the contraband. State v. Johnson, 94-1170 (La.App. 4 Cir. 8/23/95); 660 So.2d 942. See Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990); Texas v. Brown, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983).
Unreasonable searches and seizures are prohibited by both the Fourth Amendment to the United States Constitution and Article 1, § 5 of the Louisiana Constitution. An illegal detention of a person is considered an unreasonable seizure. It is well settled that a seizure and search conducted without a warrant issued upon probable cause is per se unreasonable unless the warrantless seizure and search can be justified by one of the narrowly drawn exceptions to the warrant requirement. State v. Tatum, 466 So.2d 29 (La.1985). Louisiana Code of Criminal Procedure article 703(D) provides that the state shall bear the burden of proving the admissibility of evidence seized without a warrant.
A form of "seizure" which is permitted without the need of a warrant or probable cause is an investigatory stop made pursuant to Louisiana Code of Criminal Procedure article 215.1(A). Cf. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, (1968). Unlike an arrest which can be made only on probable cause, an investigatory stop may be made under the more relaxed reasonable suspicion standard. The right to make an investigatory stop and question the individual detained must be based upon reasonable cause or reasonable suspicion that the person has been, is, or is about to be engaged in criminal conduct. La.Code Crim.P. art. 215.1(A); State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). An investigatory stop is no less a restriction on a person's liberty of movement than an arrest, but is considered less of an intrusion because it is briefer than an arrest. State v. Cabanas, 594 So.2d 404 (La.App. 1 Cir.1991), quoting State v. Vincelli, 555 So.2d 21 (La. App. 1 Cir.1989).
In determining whether or not reasonable cause exists to temporarily detain a person, the totality of the circumstances, "the whole picture," must be considered. Belton, 441 So.2d at 1198; State v. Hall, 581 So.2d 337, 338 (La.App. 3 Cir.1991). As was noted by this court in State v. Thibodeaux, 531 So.2d 284, 285 (La.App. 3 Cir.1987), quoting State v. Bickham, 404 So.2d 929 (La.1981), reasonable cause for a Terry stop is less than probable cause, "but the officer must have articulable knowledge of particular facts, which in conjunction with reasonable inferences drawn therefrom is subject to provide reasonable grounds of past, present or future criminal activity."
A generalized suspicion or "hunch" that an individual is involved in criminal conduct is not sufficient to detain the individual or his automobile. A police officer must have a particularized suspicion based upon articulable facts. Thibodeaux, 531 So.2d 284; State v. Thompson, 543 So.2d 1077 (La.App. 2 Cir.), writ denied, 551 So.2d 1335 (La.1989); State v. Bunnell, 517 So.2d 439, (La.App. 1 Cir.1987). If the police officer has a specific suspicion of criminal activity, he may further detain the individual while he diligently pursues a means of investigation likely to quickly confirm or dispel the particular suspicion. United States v. Sharpe, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985).
Although Officer Strother may have had probable cause to stop the taxicab for the traffic violation and he may have been justified in asking Dupars to exit the vehicle, it is questionable whether the facts support a finding that Officer Strother's suspicion of criminal conduct on the part of Dupars was reasonable and whether he had reasonable cause to pat him down. He testified that Dupars and defendant were free to go when he initially stopped the cab for the traffic violation, but that he had reasonable suspicion of criminal conduct on their part. When questioned about the facts upon which he based his reasonable suspicion of possible criminal conduct, Strother testified that it was the first time he had ever seen defendant in a taxicab, the first time he had seen him on Block Street and Henry Alley (known high drug areas), and his actions on the traffic stop were not as flamboyant and outgoing as they normally were on a traffic stop. Officer Strother further testified he removed *572 Dupars from the car instead of defendant because Dupars was the one that was "highly nervous", sweating, and staring at him.
Based on the record, the officers' suspicion of possible criminal conduct on the part of Dupars and defendant amounted to a "hunch" that was based on their prior dealings with defendant and their opinion that defendant was outside of his known area. The officers had no knowledge of Dupars. Regarding Dupars alone, the officers did not articulate facts other than Dupars' nervous behavior to support reasonable suspicion that Dupars, and not defendant, was engaged in criminal activity. Dupars' association with defendant was not sufficient for reasonable suspicion to believe he was engaged in criminal activity. See State v. Lanter, 391 So.2d 1152 (La.1980).
According to Officer Strother, Dupars and defendant were free to go when he initially stopped the cab driver for the traffic violation. However, Officer Strother did not question Dupars when he exited the taxicab; rather he immediately frisked him. There was no investigatory stop phase during which Dupars would have been free to disregard questions and walk away. United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497, (1980); Hall, 581 So.2d 337.
Officer Strother testified Dupars' "sweating and staring" caused him to request that Dupars exit the cab for reasons of officer safety. While this behavior may have justified Officer Strother's asking Dupars to exit the vehicle for safety reasons, nervousness alone is insufficient to establish reasonable suspicion of possible criminal conduct. State v. Cormier, 94-537 (La.App. 3 Cir. 11/2/94); 649 So.2d 528; See State v. Burton, 93-828 (La.App. 3 Cir. 2/23/94) 640 So.2d 342, writ denied, (La.4/7/94) 641 So.2d 203; Hall, 581 So.2d 337.
In both Cormier and Burton, nervousness was but one aspect of the factual scenario which established reasonable suspicion. In Cormier, an officer observed a subject engaged in a hand to hand transaction during a drug surveillance operation in a high crime area. Subsequently, a patrol unit stopped defendant and his companions for a traffic violation. The officer obtained permission from defendant to search the vehicle which yielded crack cocaine. We held that based on the combined factors of the traffic violation, the observation of a hand to hand transaction in an area known for drug activity, and defendant's behavior, a trained police officer could reasonably conclude the defendants were engaged in criminal activity.
In Burton, after defendant was stopped for a speeding violation, the officer noticed he was exceptionally nervous. The officer questioned both defendant and his companion subjects about their recent activities and received conflicting stories. The officer then asked Burton to sign a consent to search form and he refused. The officer told both subjects they were free to go, but that their vehicle would have to remain at the scene. During the subsequent search of the vehicle, the officers discovered cocaine. This court upheld the continued detention of the automobile based on the traffic violation, the conflicting stories of the subjects, and the nervous behavior of defendant. Clearly, in the case at hand, the officers had little else other than Dupars' nervousness to establish reasonable suspicion of criminal activity. They saw no hand to hand activity, they neither requested nor obtained a permission to search, and they did not question either of the subjects.
Further, in Hall, 581 So.2d 337, this court upheld a stop and frisk where one officer approached three unidentified individuals in a high crime area during the early morning hours where all nearby businesses were closed. There was no apparent reason for the individuals presence in the area. The officer asked the subjects to fill out a "filed interview form" and told them he wanted to ask them a few questions. As in the present case, the officer in Hall decided to frisk the subjects before he conducted the interviews. As he began to pat down one subject, he noticed the defendant kept placing her hand in her pocket and was stepping away from him. The officer then patted the defendant down to check for a weapon. Finding that La.Code Crim. P. art. 215.1 was applicable to that situation, this court upheld the frisk as a weapons search.
*573 The officers in the present case were not alone when they confronted Dupars and defendant. While Officer Strother frisked Dupars, Officer Joffrion guarded defendant. There were two to four more officers at the scene for backup purposes. Officer Joffrion testified the officers were not in a high crime area when they stopped the cab. Dupars made no overt or threatening movements toward Officer Strother. Dupars made no attempt to retrieve an object from his pockets.
The Louisiana Supreme Court explained the justification for a weapon's frisk in State v. Wade, 390 So.2d 1309, 1312 (La.1980), cert. denied, 451 U.S. 989, 101 S.Ct. 2326, 68 L.Ed.2d 848 (1981):
The purpose of allowing a limited weapons search is to prevent harm to police officers by allowing action prior to a crisis stage. Terry, supra. Police officers are not required to stand by and give a suspect the first move before taking action. "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Terry, 392 U.S. at 27, 88 S.Ct. at 1883. Equally important is the protection of the suspect, presumed innocent by law, from the harm that could result to him should he naively do an act interpretable as reaching for a weapon at a time when a police officer may reasonably suspect the presence of a weapon. Within this class of actions could be such innocent acts as reaching into the back pocket to produce a wallet or thrusting a hand into a jacket for a pack of cigarettes.
(emphasis added).
Officer Strother's testimony does not justify the pat down of Dupars. The basis for Officer Strother's belief that Dupars might have been armed with a weapon is not apparent in the testimony. The officers in this case did not articulate any reason why they thought Dupars might have possessed a weapon of any sort. Although Officer Strother testified he had information from a confidential informant that defendant owned a weapon, Strother had never encountered Dupars on any prior occasion. Dupars and defendant were in a taxicab, were not in a high crime area, and backup police officers were called to support their "traffic stop." Although Dupars was "sweating and shaking," he exhibited no evasive or threatening conduct. It is clear from the totality of the circumstances that the officers' purpose for the traffic stop was their "hunch" that defendant was engaged in some criminal conduct. In this instance, the officers created the street confrontation with Dupars and defendant without any articulable reasonable suspicion to justify the stop and subsequent intrusion into a constitutionally protected area. Further, the detention and search of Dupars cannot be justified as an investigatory stop or a weapons search and as such is an unreasonable seizure under both the United States and Louisiana Constitutions. The evidence seized as a result of the search of Dupars is, therefore, suppressed.

CONCLUSION
The trial court erred in denying the defendant's, Demond Issac Purvis, motion to suppress the evidence. Defendant's conviction is reversed, the motion to suppress the evidence of the unlawful search is granted, and the case is remanded for further proceedings.
REVERSED AND REMANDED.