892 So.2d 71 (2004)
STATE of Louisiana
v.
Lloyd JACKSON.
No. 04-KA-728.
Court of Appeal of Louisiana, Fifth Circuit.
December 14, 2004.
*73 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Andrea F. Long, Kia M. Habisreitinger, Assistant District Attorneys, Twenty-Fourth Judicial District, Parish of Jefferson, Gretna, LA, for Plaintiff/Appellee.
Bruce G. Whittaker, New Orleans, LA, for Defendant/Appellant.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS, and SUSAN M. CHEHARDY.
THOMAS F. DALEY, Judge.
On September 20, 2001, the defendant, Lloyd Jackson, was charged in a Bill of Information with possession of marijuana with intent to distribute in violation of LSA-R.S. 40:966(A). He pled not guilty and filed several pre-trial motions including a Motion to Suppress the evidence. On August 6, 2003, he was found competent to stand trial, and on September 24, 2003, he proceeded to trial. His Motion to Suppress the evidence was denied after a hearing outside the presence of the jury. A twelve-person jury found the defendant guilty as charged by a vote of ten to two. The defendant was sentenced to ten years at hard labor.
On December 22, 2000, State Trooper David Flauss conducted a traffic stop of a 1984 Oldsmobile Cutlass because the driver was not wearing a seatbelt. He advised the driver the reason for the stop and noticed the passenger, later identified as the defendant, appeared nervous. According to Trooper Flauss, the defendant continued looking straight ahead, avoided eye contact, and had his hands down between his legs where Trooper Flauss could not see them. Out of concern for his safety, Trooper Flauss instructed the defendant to place his hands in plain view and asked him for identification. The defendant produced a Louisiana State Identification card, but refused to look at Trooper Flauss. Trooper Flauss instructed the defendant to look up so he could match him to the photograph on the identification card. The defendant complied and then placed his hands into his pockets. Again concerned for his safety, Trooper Flauss asked the defendant to remove his hands from his pockets. As the defendant removed his hands, his left hand hit the left pocket of his sweatshirt and a small blue transparent ziploc bag, containing what Trooper Flauss believed to be marijuana, fell to the ground.[1]
*74 Trooper Flauss attempted to arrest the defendant for possession of marijuana. The defendant resisted arrest and a scuffle occurred in which the defendant spun, shoved Trooper Flauss, and violently pulled and jerked trying to get away as Trooper Flauss attempted to handcuff him. Trooper Flauss verbally ordered the defendant to stop resisting, but when he pulled away again Trooper Flauss grabbed his sweatshirt. The defendant continued to try to get away as Trooper Flauss pulled him back, but after the defendant swung hitting Trooper Flauss' right hand and jerked away the defendant's sweatshirt slipped right over the top of his head. The defendant escaped abandoning his sweatshirt. Trooper Flauss searched the sweatshirt, and found a Crown Royal bag with eighteen small transparent ziploc bags, each containing marijuana, in the left pocket.[2] An arrest warrant was issued for the defendant, and he was subsequently arrested.
In his first Assignment of Error, the defendant argues the trial court erred in denying his Motion to Suppress the marijuana, because the initial automobile stop did not provide reasonable suspicion or probable cause to search him. The defendant argues Trooper Flauss' requests that he show his hands, provide identification, and look at him amounted to an unlawful detention. He further maintains the order to show his hands was tantamount to an outer clothing search and that Trooper Flauss did not have an articulable basis to believe he was armed and dangerous so as to justify such a search.
Prior to trial, the defendant filed a Motion to Suppress the evidence on the basis that the evidence was seized without a valid exception to the warrant requirement and without probable cause to search him. The trial court denied the Motion to Suppress the evidence after a hearing, on the morning of the defendant's trial.
The State bears the burden of proof in establishing the admissibility of evidence seized without a warrant. State v. Rodriguez, 99-914, p. 4 (La.App. 5 Cir. 1/25/00), 761 So.2d 14, 17, writ denied, 00-599 (La.4/7/00), 759 So.2d 765. The trial court is afforded great discretion when ruling on a Motion to Suppress and its ruling will not be disturbed unless the preponderance of the evidence clearly favors suppression. In determining whether the ruling on a Motion to Suppress was correct, the court is not limited to the evidence adduced at the hearing on the motion, but may consider all pertinent evidence given at the trial of the case. State v. Washington, 00-1542, p. 7 (La.App. 5 Cir. 2/14/01), 782 So.2d 639, 645, writ denied, 01-940 (La.2/8/02), 807 So.2d 859.
The defendant appears to concede in his brief that the traffic stop for a seatbelt violation was valid under LSA-R.S. 32:295.1. However, he contends the action of Trooper Flauss after the stop exceeded the permissible scope of a traffic stop.
LSA-R.S. 32:295.1 provides that the driver of a passenger car, van, or pickup truck "shall have a safety belt properly fastened about his or her body at all times when the vehicle is in forward motion." Subsection (F) provides:
Probable cause for violation of this Section shall be based solely upon a law enforcement officer's clear and unobstructed view of a person not restrained as required by this Section. A law enforcement officer may not search or *75 inspect a motor vehicle, its contents, the driver, or a passenger solely because of a violation of this Section.
(Emphasis added.)
At the hearing, Trooper David Flauss testified he stopped the vehicle in which the defendant was a passenger because the driver was not wearing a seatbelt. Nothing was presented at the hearing, or at trial, to refute the fact that the driver was not wearing his seat belt. Therefore, the initial traffic violation, the driver's failure to wear a seat belt, constituted reasonable cause for a stop. See, State v. Bright, 03-489, p. 4 (La.App. 5 Cir. 10/28/03), 860 So.2d 196, 201, writ denied, 03-3409 (La.4/2/04), 869 So.2d 875, where this Court stated a traffic violation constitutes reasonable cause for a stop.
Once Trooper Flauss stopped the vehicle, he was authorized to order both the driver and passenger out of the vehicle, in order to ensure his safety and that of vehicle's occupants. Maryland v. Wilson, 519 U.S. 408, 415, 117 S.Ct. 882, 886, 137 L.Ed.2d 41 (1997); State v. Benoit, 01-2712 (La.5/14/02), 817 So.2d 11, 15. In the instant case, the record does not clearly establish that Trooper Flauss ordered the defendant to exit the vehicle. Rather, the record indicates that the defendant exited the vehicle in response to Trooper Flauss' request for identification. The defendant asserts the officer's request for identification and repeated orders for the defendant to show his hands constituted an impermissible search and seizure that was not based on probable cause.
In State v. Landry, 588 So.2d 345, 348 (La.1991), the Louisiana Supreme Court found that a police officer's request for identification from the passenger of a vehicle stopped for a traffic violation did not impermissibly infringe on his right to privacy. In Landry, the vehicle, in which the defendant was a passenger, was stopped for a speeding violation. Both the driver and the defendant were ordered out of the vehicle and asked for identification. The officer ran a computer check and learned the defendant had an outstanding attachment. The defendant was arrested and was found to be in possession of cocaine as a result of a search incident to his arrest.
After finding the officer was justified in ordering the defendant out of the vehicle, the Louisiana Supreme Court addressed the legality of the officer's request for identification. The Court found the request for identification was not unreasonable under the circumstances. The Court noted the officers had a security interest in determining whether the men with whom they were dealing were dangerous. The Court also explained that a person has little expectation in the documentation commonly used for identification purposes. The Court further noted that the identification was obtained by a simple request rather than the officer reaching into defendant's wallet.
In State v. Johnson, 591 So.2d 803 (La.App. 3 Cir.1991), the Third Circuit found it was not unreasonable for a police officer to order the passenger of a vehicle to remove his hands from his pocket during an investigatory stop. The defendant was sitting in an illegally parked car that was blocking traffic. The police officer asked the passenger to exit the vehicle and approach him. The defendant complied, but appeared nervous and kept both his hands in his coat pockets. For safety reasons, the police officer asked the defendant to remove his hands from his pockets. The defendant removed his hands and invited the officer to search him. A subsequent pat down search revealed a rock of cocaine inside defendant's pocket. The Third Circuit cited State v. Landry, supra, in finding that the police officer was justified in *76 ordering the defendant to remove his hands from his pockets by "the interest of self-protection."
In the instant case, Trooper Flauss testified that as he was explaining to the driver the reason for the stop and defendant appeared extremely nervous and fidgety, refused to make eye contact, and had his hands down between his legs where Trooper Flauss could not see them. Trooper Flauss, who was working alone, stated the defendant's actions were suspicious, which caused him to be concerned for his safety. He explained he did not know if the defendant was hiding anything, such as a weapon, between his legs or on the seat.
Under these circumstances, it does not appear Trooper Flauss' requests, for identification and that defendant remove his hands from his pockets, constituted an impermissible intrusion into the defendant's privacy under the Fourth Amendment. Trooper Flauss' request for identification, and requests for the defendant to show his hands and then to remove his hands from his pockets was a limited intrusion into the defendant's privacy justified by his concern for his safety under the circumstances.
The defendant further argues Trooper Flauss did not have justification for conducting a pat-down search. The defendant attempts to equate Trooper Flauss' requests for him to show his hands and to remove his hands from his pockets to a pat-down search. By definition, a pat-down search or a frisk requires some sort of physical contact. The term "pat" is defined as "to mold by tapping lightly with the hands or a flat implement." The American Heritage Dictionary, Second College Edition. "Frisk" is defined as "to search (a person) for something concealed, esp. weapons, by passing the hands quickly over clothes." Id. Thus, Trooper Flauss' request that the defendant remove his hands from his pockets does not constitute a pat-down search.
After exiting the vehicle, the defendant resisted arrest when Trooper Flauss attempted to handcuff him, and escaped during an ensuing struggle in which he lost his sweatshirt. After the defendant fled abandoning his sweatshirt, Trooper Flauss searched the sweatshirt and found the eighteen bags of marijuana. If a defendant abandons property prior to any unlawful intrusion into his right to be free from governmental interference, then the property may be lawfully seized and used against the defendant in a resulting prosecution. State v. Bright, supra at 202. As discussed above, there was no unlawful intrusion by the officer prior to the abandonment of the marijuana. Therefore, the trial court did not err in denying defendant's Motion to Suppress, because the evidence was lawfully seized.
This Assignment of Error lacks merit.
In his second Assignment of Error, the defendant argues that his ten-year sentence for possession with intent to distribute marijuana is excessive. He contends that he only possessed a small amount of marijuana and that his offense is a non-violent one.
The defendant filed a written Motion to Reconsider his sentence on the basis he had no prior convictions for crimes of violence. He further claimed that the evidence against him was weak, because only eleven of the nineteen bags tested positive for marijuana, and his actions prior to the stop were not indicative of an intention to sell the marijuana.
Both the United States and the Louisiana Constitution prohibit the imposition of excessive or cruel punishment. U.S. Const. amend. VIII; La. Const. of *77 1974, art. I, § 20. A sentence is constitutionally excessive, even if it is within the statutory limits, if it is grossly disproportionate to the severity of the offense or is nothing more than the needless and purposeless imposition of pain and suffering. State v. Wickem, 99-1261, p. 7 (La.App. 5 Cir. 4/12/00), 759 So.2d 961, 968, writ denied, 00-1371 (La.2/16/01), 785 So.2d 839. Trial judges are granted great discretion in imposing sentences, therefore a sentence within the statutory limits will not be set aside as excessive absent manifest abuse of discretion. State v. Bacuzzi, 97-573, p. 5 (La.App. 5 Cir. 1/27/98), 708 So.2d 1065, 1068-1069.
Three factors are considered in reviewing a trial court's sentencing discretion: 1) the nature of the crime, 2) the nature and background of the offender, and 3) the sentence imposed for similar crimes by the same court and other courts. State v. Watts, 99-311, p. 6 (La.App. 5 Cir. 8/31/99), 746 So.2d 58, 64, writ denied, 99-2733 (La.3/24/00), 758 So.2d 145. In reviewing a sentence, the appellate court must determine whether the trial court abused its broad discretion, not whether another sentence might have been more appropriate. Id.
In the instant case, the defendant was convicted of possession with intent to distribute marijuana and faced a sentencing range of five to thirty years. LSA-R.S. 40:966(B)(2). The defendant received a sentence of ten years, which is below the mid-range sentence.
Other courts have upheld ten-year sentences for the possession of marijuana with the intent to distribute. In State v. Stockman, 38,199 (La.App. 2 Cir. 4/7/04), 870 So.2d 453, the Second Circuit found a sixty-five-year-old defendants ten-year sentence for possession with intent to distribute marijuana not to be excessive. The court noted the sentence fell within the lower third of the sentencing range, and that defendant had prior felony drug convictions. Also, in State v. Price, 00-987 (La.App. 3 Cir. 1/31/01), 780 So.2d 489, 492, the Third Circuit upheld the defendants ten-year sentence for possession of marijuana with the intent to distribute. The court stated the sentence was in the low-range and noted the defendant was also charged with resisting arrest, battery on a police officer and aggravated flight from an officer in connection with his conviction.
In the present case, the record indicates the defendant had three misdemeanor convictions for possession of marijuana; a 1998 conviction for battery on a police officer; a 1998 conviction for simple battery; and five counts of battery on a police officer in 2000. In addition, the prosecutor represented that the defendant was facing charges for armed robbery, distribution of cocaine, disarming a police officer, and simple escape. Furthermore, the defendant resisted arrest and fled from the police during the present offense. Based on these facts, it does not appear the defendants ten-year sentence is excessive when he could have received thirty years.
This Assignment of Error lacks merit.
In his third Assignment of Error, the defendant requested a review of the record for all errors patent. As requested by defendant, the record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
The defendant received an illegally lenient sentence, because the trial court failed to impose a fine. The defendant was convicted of possession with intent to distribute marijuana, which requires a fine of not more than $50,000.00. LSA-R.S. 40:966(B)(2).
*78 This Court has found that the trial court's failure to impose a fine where the statute requires a fine "of not more than" a stated amount, as in LSA-R.S. 40:966(B)(2), to be an illegally lenient sentence. See, State v. Fletcher, 03-60, p. 9 (La.App. 5 Cir. 4/29/03), 845 So.2d 1213, 1222, and State v. Qutoum, 02-780, p. 11 (La.App. 5 Cir. 1/28/03), 839 So.2d 323, 333-334, writ denied, 03-595 (La.5/30/03), 845 So.2d 1059. While LSA-R.S. 40:966(B)(2) requires a term of imprisonment and a fine, the statute does not specifically set forth a minimum fine.
In State v. Washington, 03-1135, p. 11 (La.App. 5 Cir. 1/27/04), 866 So.2d 973, 984-985, this Court recognized its permissive authority to correct an illegally lenient sentence, despite the failure of either party to raise the issue in the trial court or on appeal, but refrained from amending the defendant's sentence to impose a fine. The State notes in its brief that the trial court failed to impose a fine. However, the State did not object to the trial court's failure to impose a fine. Therefore, we will refrain from amending the defendant's sentence to impose a fine.
Second, the trial court failed to properly inform the defendant of the correct prescriptive period for filing post-conviction relief pursuant to LSA-C.Cr.P. art. 930.8. The trial court advised defendant he had "two years to file for post-conviction relief", but did not advise defendant of when the time period runs.[3] This Court has held that the failure to advise the defendant that the prescriptive period begins to run from the time his conviction and sentence becomes final is incomplete. See, State v. George, 99-887, p. 3 (La.App. 5 Cir. 1/4/00), 751 So.2d 973, 975. Therefore, we remand, and order the district court to send written notice of the prescriptive period to the defendant within ten days of the rendering of this opinion, and then file written proof in the record that the defendant received the notice in the record. Id.
Finally, the minute entry reflects that thirteen jurors and one alternate juror were selected for the jury, but the transcript reflects the jury was polled with a result of a ten to two vote. Additionally, the jury polling slips contained in the exhibit folder indicate that only twelve jurors deliberated. Therefore, it appears the minute entry incorrectly reflects that thirteen jurors were selected for the jury. Where there is a discrepancy between the minute entry and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). In order to ensure an accurate record, we remand the matter and order the minute entries to be corrected to reflect the correct number of jurors. State v. Hall, 03-906, p. 11 (La.App. 5 Cir. 5/26/04), 875 So.2d 996, 1007.
AFFIRMED & REMANDED.
NOTES
[1] The contents of the small blue transparent ziploc bag were later confirmed to be marijuana.
[2] The record shows ten of the eighteen bags were individually tested, and all ten tested positive for marijuana.
[3] The minute entry reflects the defendant was properly advised he had two years after judgment of conviction and sentence became final to file for post-conviction relief. However, where there is an inconsistency between the transcript and the minute entry, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983).