WILLIAMS, Judge.
In this criminal appeal, defendant claims the trial court erred in allowing the State to introduce testimony concerning an out-of-court statement made by defendant, to a witness, without first providing defendant either discovery or notice pursuant to LSA-C.Cr.P. art. 768. We find defendant’s claim meritless. The notice requirement of article 768 does not apply to the testimony elicited at trial because the testimony does not contain “a confession or inculpatory statement.” Therefore, as we find no errors patent, we affirm defendant’s conviction and sentence.
*543 FACTUAL AND PROCEDURAL HISTORY
On January 23, 1989, defendant Robert L. Gash was charged by bill of information with simple burglary of an inhabited dwelling in violation of LSA-R.S. 14:62.2.[1] At his arraignment, defendant pled not guilty. Following the denial of his motion to suppress the evidence, defendant exercised his right to a jury trial. The jury of twelve found defendant guilty as charged. Thereafter, defendant was sentenced to serve four years at hard labor with credit for time served from January 6, 1989 until June 21, 1989, and without benefit of parole, probation or suspension of sentence during the first year.
At trial, Darlene Dickerson was the State’s first witness. Dickerson lives at 3104 DeSoto Street, New Orleans, two houses down from 3112 DeSoto Street, the residence which was allegedly burglarized. She testified that on January 6, 1989, she returned home from her child’s nursery at approximately 1:30 p.m. and observed a car parked in front of the house at 3112 DeSo-to. She also observed three black men loading stereo equipment into the parked car.
Even though Dickerson did not know the occupant of 3112 DeSoto at that time, she knew a single man lived in the home, knew he drove a small red car and knew he was normally not home during the day. She testified that the car she observed being loaded with stereo equipment was dark blue and probably a Buick Regal. Dickerson attested that she was suspicious. She went into her home, but continued to watch the three men through a window. They left almost immediately after she went inside her home. Nevertheless, she was still able to copy down a partial license plate number.
After the three men drove away, Dickerson went to 3112 DeSoto to see if the man who she recognized as the resident was home. When she arrived at the house, its door was open. The house appeared to have been ransacked. As no one was home, she telephoned the police.
The State also called as a witness Officer Larry Lesslie of the New Orleans Police Department. Officer Lesslie testified that when he entered the residence at 3112 De-Soto he found the house ransacked. In the middle of the living room floor, he observed a television in a box that was not made for the television. Officer Lesslie also noted a screen had been removed from a kitchen window. He opined that it appeared as if a flat narrow tool had been used to force open the latch on the old wooden window.
After surveying the residence, Officer Lesslie interviewed Anthony Calcagno, the resident of 3112 DeSoto who had been called home from work. Calcagno confirmed he had not been home during the alleged burglary. He also indicated that items were missing from his home.
Next, Officer Lesslie interviewed Dickerson. She told him of the (partial) license plate numbers she had copied down. His follow-up investigation of the plate numbers showed three vehicles registered with numbers which “came close” to Dickerson’s physical description of the vehicle. Officer Lesslie proceeded to the address of the vehicle registered closest to the 3100 block of DeSoto.
The vehicle Officer Lesslie tracked was registered to Brian King. When Officer Lesslie arrived at King’s residence, he found the vehicle described by Dickerson parked in front of King’s home. After interviewing King, Officer Lesslie was directed by him to an individual who matched the physical description provided by Dickerson. That individual was identified in court as the defendant, Gash.
Officer Lesslie found defendant walking down the 2600 block of St. Ann and he informed him that he was the subject of a burglary investigation. Defendant in *544 formed Officer Lesslie that he was staying at 2614 St. Ann with his sister, Geneva. He also informed Officer Lesslie that he had been with his cousin, Arthur Cook, earlier in the day when they went to pick up a stereo. As defendant was wearing two watches, he informed Officer Lesslie that Cook had given him the watches and that he had never seen the watches before that day.
In response to Officer Lesslie’s inquiry, defendant denied having any knowledge of a burglary. Nevertheless, Officer Lesslie confiscated the watches and accompanied defendant to 2614 St. Ann. At that address, Geneva gave Officer Lesslie written permission to search the premises. He found only the packaging of cassettes or compact discs of Beethovan’s symphonies. The neighbor next door at 2612 St. Ann, however, also gave Officer Lesslie permission to search their premises.[2] In the kitchen at 2612 St. Ann, Officer Lesslie found a stereo, cabinet and speakers matching the ones missing from Calcagno’s residence.[3]
Brian King also testified for the State. He stated that he knew defendant as a neighbor who lived down the street. At about noon on January 6, 1989, while King was washing his car, defendant approached him and asked if he would give his cousin and him a ride.- The cousin, Cook, gave King the directions to DeSoto Street. When they arrived, King stayed in the car, defendant stood at the gate to the house and Cook went into the house. Cook appeared to have a key to the front door. King testified Cook was in the house no more than five minutes before he came out with the stereo. King then exited his car and opened the trunk. King said that, at first, the stereo would not fit into the trunk and Cook became very nervous when he saw a lady on a porch or in a window watching them. King testified that Cook wanted to sit on the trunk in order to hide the license plate. When King asked why did he want to sit on the trunk, Cook responded, “there was a lady watching us.” When they returned to St. Ann Street, defendant gave King $3.00 for gasoline money-
After the State rested, defendant took the stand. He testified that Cook told him he had recently broken up with his girlfriend. He needed a ride to her house to pick up his stereo equipment. After Cook, King and he arrived at 3112 DeSoto, Cook told him not to enter the house because he did not want to further aggrevate his estranged girlfriend. Therefore, defendant stayed outside and waited for Cook to bring out the stereo. Defendant also declared that Cook gave him the watches because he had paid King the $3.00 for gasoline money.
ASSIGNMENT OF ERROR
Defendant claims the trial court erred in allowing the State to introduce testimony concerning an out-of-court statement made by him to King, without first providing him either discovery or notice pursuant to LSA-C.Cr.P. art. 768.
Article 768 provides as follows:
*545 Art. 768. Same; use of confession or inculpatory statement; notice to defendant prior to opening statement
Unless the defendant has been granted pretrial discovery, if the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the state’s opening statement. If it fails to do so a confession or inculpatory statement shall not be admissible in evidence.
As used in article 768, the term “inculpa-tory statement” refers to an out-of-court admission of incriminating facts made by the defendant after the crime has been committed. State v. Bodley, 394 So.2d 584 (La.1981). An incriminating statement is one which admits a fact tending to establish guilt, or from which guilt can be inferred. Id.; State v. Rogers, 375 So.2d 1304 (La.1979), on orig. hr’ng [“The distinction is that a confession admits commission of the crime, whereas the inculpatory statement admits a fact, circumstance or involvement which tends to establish guilt or from which guilt may be inferred.”].
The testimony which defendant claims is inculpatory and, therefore, should not have been admissible because he was not granted pretrial discovery and/or the State had not given him proper notice, is as follows:
State:
Q. What did Robert Gash say to you? King:
A. When I was getting ready to leave, he said “did — ” because I was on the porch, and he was walking to Broad Street, he said “did Arthur — ” the little short guy, he said, “did he tell you what happened?” I said “yes, he did.” And I said “why didn’t you explain this to me before we went there?” (emphasis added)
On cross-examination by the defense, King elaborated on this statement. He testified as follows:[4]
Defense: ■
Q. Well, did Robert ever say anything to you, that he had been used too?
King:
A. No, he did not.
Q. He didn’t, but he didn’t tell you he knew he was going to be riding around with a guy who committed a burglary?
A. From the statement that he gave me, I personally would assume he knew, because of the way he told me the statement.
Q. Well what was that statement then?
A. He said “did Arthur explain to you what had happened?” And what happened was was the guy, they told me it was a white guy, whose house we went to, owed Arthur money for some cocaine, and—
Q. Arthur told you this?
A. No, he (indicating defendant) told me this. This is after the fact, and he said “the guy, it was a white guy, he gave us the key and told us to take the stereo in payment of that.” That’s what was told to me afterwards.
Although the contested statement, admitted into evidence on direct examination, was made out-of-court and after the crime was committed, it does not contain an incul-patory statement. King’s statement that defendant asked, “[D]id Arthur ... tell you what happened?” does not admit a fact, circumstance or involvement which tends to establish guilt or from which guilt may be inferred. See Rogers, supra. The statement merely attests that defendant asked King if Cook told him what had happened. Therefore, compliance with article 768’s notice requirements was not a necessary prerequisite to the admission of the testimony into evidence.
Furthermore, the statement elicited from King by defense counsel is not inculpatory. King testified on cross-examination that defendant told him the person who lived at 3112 DeSoto owed Cook money for cocaine, the person gave Cook and him the key to the house and the person told them to take *546 the stereo from the house as payment for the cocaine. Standing alone, this statement is exculpatory and not inculpatory. See Bodley, supra. Rather, only when it is compared to defendant’s own trial testimony, does the statement appear inconsistent and inculpatory.[5]
ERRORS PATENT
A review of the record for errors patent reveals there are none.
As defendant’s claim lacks merit and as there are no errors patent, defendant’s conviction and sentence are affirmed.
AFFIRMED.

. The bill of information also charged Arthur Cook with committing simple burglary in violation of LSA-R.S. 14:62.2. However, Cook was at-large until approximately a week before defendant's trial. Thereafter, Cook’s case was reallotted to another section of criminal district court as the judge who tried defendant’s case had prosecuted Cook while he was engaged as an assistant district attorney in Jefferson Parish.

. 2612 St. Ann is in the same building as 2614. The two residences are also connected to one another by an inner door.
Nicole Lee, who is approximately age twelve, lives at 2612 St. Ann. She testified that when she heard the police knock on the door of 2614 St. Ann, she knocked on the inner door which connected her apartment to Geneva’s apartment. The door was then opened and stereo equipment was shoved into 2612 St. Ann by Cook and two friends. Nicole’s mother, Toni Lee, testified that when she returned home, she gave the police permission to search her home. When they searched it, she said they found the stereo equipment which was subsequently identified as belonging to Calcagno.

. Anthony Calcagno testified that he rented the house at 3112 DeSoto from his father and that he had locked the house when he left at 7:45 a.m. on January 6, 1989. He stated that he had not given defendant or Cook a key to his dwelling. He was also certain the two elderly tenants (one being his grandmother), who consecutively lived in the house from 1970 till when he moved in, had not given defendant or Cook a key. Calcagno also identified as belonging to him the two broken watches defendant was wearing when they were confiscated by Officer Lesslie, the Beethovan packaging found in 2614 St. Ann, and the stereo equipment found in 2612 St. Ann.

. As this statement was elicited by defendant's counsel, defendant can not complain of its admission into evidence.

. Defendant testified that he went with Cook to 3112 DeSoto under the belief that Cook had lived there with his ex-girlfriend and needed assistance in removing his stereo from his former abode.