732 So.2d 105 (1999)
STATE of Louisiana
v.
Letola WILLIAMS.
No. 98-KA-0806.
Court of Appeal of Louisiana, Fourth Circuit.
March 24, 1999.
*106 Harry F. Connick, District Attorney, Orleans Parish, Susan Erlanger Talbot, Assistant District Attorney, New Orleans, Louisiana Counsel for Plaintiff/Appellee.
Sherry Watters, Louisiana Appellate Project, New Orleans, Louisiana, Counsel for Defendant/Appellant.
*107 Court composed of Judge MOON LANDRIEU, Judge PATRICIA RIVET MURRAY, and Judge Pro Tempore JAMES A. GRAY, II.
LANDRIEU, Judge.
The defendant, Letola Williams, was charged by bill of information with possession of cocaine in violation of La.Rev.Stat. 40:967. Following a hearing, the district court found probable cause and denied a defense motion to suppress evidence. After a jury trial on May 22, 1995, the defendant was found guilty as charged. On May 30, 1995, the district court sentenced the defendant to serve two years at hard labor, suspended the sentence, and placed the defendant on active probation for two years. On November 5, 1996, the defendant was arrested for probation violations. On December 4, 1996, the district court revoked the defendant's probation and sentenced him to serve two years at hard labor. On October 30, 1997, defendant's motion for an out-of-time appeal was granted.
On January 23, 1995, at approximately 8:00 p.m., New Orleans Police Officers Warren Walker and Jimmy Turner responded to a 911 trespassing call at 8181 Lake Forest Boulevard. When they arrived on the scene, Diane Harris, the complainant, told them that the defendant, who was standing outside her residence, did not live with her and that she wanted him to go home. The officers told the defendant to leave and informed him that if they had to return, he would be arrested. The officers escorted the defendant off the premises. About twenty minutes later, the officers received another call from the same location. When the officers returned, the defendant was standing in the walkway. Officer Walker approached the defendant and began to handcuff him. As the officer grabbed the defendant's arms, the defendant dropped a metal crack pipe from his left hand on to the concrete sidewalk. When the officers retrieved the pipe, they observed that it contained residue. The officers noted that the defendant smelled of alcohol and that his eyes were glassy and bloodshot.
A stipulation was entered at trial that Officer William Giblin of the New Orleans Police Department Crime Lab would have testified that the residue in the pipe tested positive for cocaine.
Letola Williams testified that he and Diane Harris have had an ongoing relationship since 1981. They have a ten-year-old daughter together. On January 23, 1995, the defendant went to Diane's house to visit with his daughter. When he discovered that his daughter was not home on a school night, he and Diane got into an argument. Diane then called the police. The defendant left when the police arrived. However, he went to Diane's sister's house with the intention of picking up his daughter and taking her home to Diane's house. He did not think she should spend a school night out. Diane's sister, brother and several other family members followed him back to Diane's house. After he dropped off his daughter, he noticed that Diane's relatives had blocked his car. The defendant and Diane's relatives got into an argument, which escalated into a physical struggle between the defendant and one of Diane's relatives. One of Diane's relatives called the police for assistance. By the time the police arrived, Diane's family had left. The defendant denied ownership of the crack pipe. He testified that there were a number of people in the driveway that night during the fight and that the pipe could have belonged to any one of them. The defendant also denied using street cocaine. He stated that he took Cogentin and Haldol for schizophrenia, explaining that Haldol is a derivative of cocaine. The defendant also denied he had been drinking that night. He testified that his eyes become glassy and his speech slurs when his medication is not regulated. He stated he had not taken his medication that day.
Diane Harris testified for the defense that on January 23, 1995, the defendant *108 arrived at her house to visit with their daughter. However, the defendant had been drinking and was a little hostile. When the defendant would not leave, she called the police. After the police arrived, the officers escorted the defendant off the premises. The defendant then went to her sister's house to see their daughter. Diane's sister called to see if it was okay for the defendant to see the child. Diane said it was okay. However, shortly thereafter the defendant arrived at her house with their daughter. Diane's sister and other family members followed the defendant to her house. An argument and physical struggle ensued between the defendant and members of Diane's family. Someone other than Diane called the police using her name. By the time the police arrived, Diane's family members had gone home. The police officers approached the defendant, who was standing on the porch, and arrested him. The officers retrieved a crack pipe that they found on the ground under the carport. She stated that crack pipes had been found near her apartment in the past.
On rebuttal, Officer Turner explained that, when the officers arrived on the scene on the first occasion, he asked the defendant what he was doing at the residence. The defendant told the officer that he and his wife were trying to get back together. The officer noted that the defendant's speech was slurred and his eyes were glazed. When asked if he was "on that stuff," the defendant admitted that he was. The officer then suggested that the defendant had had "too much of it" and that he should go home before he got arrested.
On surrebuttal, the defendant denied drinking that night. He explained that sometimes when he is not on his medication, his speech is slow. He further explained that he had recently taken some medication and that the medication sometimes made his speech slurred and his eyes red.
A review of the record for errors patent reveals none.

Assignment of Error No. 1
The defendant first contends the state failed to produce notice of its intent to introduce an inculpatory statement made by him. La.Code Crim. Proc. art. 768 provides that "[u]nless the defendant has been granted pretrial discovery, if the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the state's opening statement. If it fails to do so a confession or inculpatory statement shall not be admissible in evidence." As used in Article 768, the term "inculpatory statement" refers to an out-of-court admission of incriminating facts made by the defendant after the crime has been committed. State v. Bodley, 394 So.2d 584, 589 (La.1981). An incriminating statement is one that admits a fact tending to establish guilt or from which guilt can be inferred. Id.; State v. Gash, 570 So.2d 542, 545 (La.App. 4th Cir.1990). To be inculpatory, a statement must have been made after the commission of the crime. State v. Quimby, 419 So.2d 951, 956 (La.1982).
The alleged inculpatory statement was introduced during Officer Turner's testimony on rebuttal. The statement of which defendant complains was made to Officer Turner during the officers' first visit to the scene. The officers testified at trial that, when they first arrived on the scene, the defendant smelled of alcohol, his eyes were bloodshot, and his speech was slurred. The complainant, Diane Harris, told them that the defendant had been drinking and she wanted him to leave. On direct-examination at trial, the defendant denied he had been drinking that night and stated his condition was caused by his failure to take his medication. On rebuttal, Officer Turner testified that during the initial call the defendant made a statement to him.
Q. What was the statement?
A. When I asked him what he was doing there, he said he and his old *109 lady were trying to get back together. His speech was slurred and his eyes were glazed. I looked at him and I said, "You on that stuff, huh?"
MR. PAPAI: Your Honor, objection.
THE COURT: I'm going to overrule that and allow the gentlemen to repeat his comment.
A: I said, "You on that stuff, huh?" He looked at me and paused. He looked at me and said, "Yeah, I'm on it. We both on it. What that got to do with this." I advised him, "Whatever you on, you had too much of it and you need to go ahead home before you be arrested."
The reference to "stuff" was ambiguous at worst and not inculpatory. At the time the statement was made, the officers had no knowledge that the defendant possessed or may have possessed a crack pipe. In fact, the officers believed that the defendant was intoxicated, as evidenced by the odor of alcohol and Ms. Harris's statement that the defendant was intoxicated. In the context of the first encounter, the statement neither directly nor indirectly inculpated the defendant as knowingly possessing illegal narcotics. Because the statement was not inculpatory, the state was not required to provide notice of its intent to introduce the statement at trial.
This assignment is without merit.

Assignment of Error No. 2
The defendant next contends the state failed to produce sufficient evidence to support his conviction for possession of cocaine.
When assessing the sufficiency of evidence to support a conviction, the appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La. 1987).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Gaines, 96-1850, p. 6 (La.App. 4 Cir. 1/29/97), 688 So.2d 679, 683, writ denied, 97-0510 (La.9/5/97), 700 So.2d 503. The elements must be proved such that every reasonable hypothesis of innocence is excluded. La.Rev.Stat. 15:438. All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d at 820. If a rational trier of fact reasonably rejects the defendant's hypothesis of innocence, that hypothesis fails, unless another hypothesis creates reasonable doubt, the defendant is guilty. State v. Captville, 448 So.2d 676, 680 (La.1984).
To support a conviction for possession of cocaine, the state must prove that the defendant was in possession of the illegal drug and that he knowingly or intentionally possessed the drug. La.Rev. Stat. 40:967; State v. Gaines, p. 5, 688 So.2d at 682. Guilty knowledge is an essential element of the crime of possession of cocaine. State v. Goiner, 410 So.2d 1085, 1086-87 (La.1982). Although a conviction for possession of cocaine can stand on the possession of the slightest amount of the drug, the amount of the substance will have some bearing on the defendant's guilty knowledge. Gaines, pp. 5-6, 688 So.2d at 682-83; State v. Spates, 588 So.2d 398, 401 (La.App. 2nd Cir.1991). In addition, the possession of drug paraphernalia, such as a metal pipe or "straight shooter," is, by its peculiar nature, indicative of guilty knowledge. Gaines, p. 6, 688 So.2d at 683; Spates, 588 So.2d at 402.
In State v. Jones, 94-1261, p. 12 (La. App. 3 Cir. 5/17/95), 657 So.2d 262, 270, the court stated that physical possession of an instrument with no utility other than the ingestion of crack cocaine is sufficient to support a conviction for possession of cocaine. *110 The court found that the defendant's flight along with his possession of an object that could only be used to smoke cocaine provided sufficient evidence to show that he knowingly possessed cocaine.
This court, in State v. Gaines, held that the defendant's flight coupled with his possession of a glass pipe, which contained cocaine residue and which had no other purpose but to ingest cocaine, was sufficient to prove the defendant's knowing possession of cocaine.
In the present case, Officers Walker and Turner testified that the defendant dropped the metal object, identified as a "crack pipe," from his left hand as the officers were arresting him for trespassing. When the officers retrieved the pipe, they observed what they believed to be cocaine residue. It was stipulated at trial that the residue found in the pipe tested positive for cocaine. The jury obviously rejected the defense's contention that someone else had dropped the pipe on the ground, choosing instead to rely on the officers' version of the incident. Although the defendant in this case did not attempt to flee, we find that the visible cocaine residue in the pipe combined with the defendant's possession of the crack pipe constituted sufficient evidence under Jackson to support the defendant's conviction for possession of cocaine.
This assignment is without merit.
For these reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.