758 So.2d 362 (2000)
STATE of Louisiana
v.
Jana MONETTE.
No. 99-KA-1870.
Court of Appeal of Louisiana, Fourth Circuit.
March 22, 2000.
*363 Harry F. Connick, District Attorney, Susan Erlanger Talbot, Assistant District Attorney, New Orleans, LA, Counsel for Plaintiff-Appellee.
Pamela S. Moran, Louisiana Appellate Project, New Orleans, LA, Counsel for Defendant-Appellant.
(Court composed of Judge WILLIAM H. BYRNES, III, Judge CHARLES R. JONES, Judge JAMES F. McKAY, III).
BYRNES, Judge.
Defendant Jana Monette was charged with possession of cocaine, a violation of La. R.S. 40:967, and was found guilty of attempted possession of cocaine on January 25, 1999, following trial by a six-person jury. The trial court denied defendant's motion for post judgment verdict of acquittal on March 25, 1999, and, after defendant waived all delays, sentenced her to thirty months at hard labor, suspended, with five years active probation and special conditions. The trial court denied defendant's motion for reconsideration of sentence and granted her motion for appeal.[1]

FACTS
New Orleans Police Officer David Osborne testified that, on January 20, 1999, he and his partner, Officer Warner, arrested a stumbling and swaying defendant for public intoxication near the intersection of Willow and General Ogden Streets. Officer Warner, recovered a crack pipe from defendant's right front pants pocket during a search incidental to that arrest. Officer Osborne identified the crack pipe in evidence, as well as a wire tube which he characterized as a "push rod," used to push crack inside of the crack pipe before it is smoked, and a "Bic" cigarette lighter. Officer Osborne said that it was obvious that defendant was intoxicated, but said he did not smell any odor of alcohol emanating from her.
New Orleans Police Officer Brian Warner's testimony essentially tracked that of his partner, Officer Osborne. Officer Warner identified a municipal summons for public intoxication issued to defendant. He also identified the crack pipe he recovered from defendant's right front pants pocket-what he said was a glass tube burned on one end with a rubber stopper on the other end. He also identified the metal "push rod" and the cigarette lighter.
*364 New Orleans Police Department Criminalist Corey Hall was qualified by stipulation as an expert in the field of forensic chemistry. Mr. Hall identified a crime lab evidence envelope with item number L-33601-98 on it, which, he testified, contained a metal tube. He detailed the procedure he would follow in rinsing the tube with methanol and testing the rinse wash with both a crystal test and a gas chromatograph mass spectrometer test. He said the results of both the crystal and spectrometer tests were positive for cocaine. He stated that there was no doubt that cocaine was present in the pipe. Mr. Hall identified a crime laboratory report under item number L-33601-98, with defendant's name and his signature on it. Mr. Hall admitted that he made no attempt to measure the amount of the cocaine, and that the only cocaine he tested was cocaine that he had to flush out of the tube with the methanol rinse.

ERRORS PATENT
A review of the record reveals no errors patent.

ASSIGNMENT OF ERROR NO. 1
By this assignment of error, defendant claims the trial court erred in denying her motion for post verdict judgment of acquittal, as the evidence was insufficient to support the verdict.
A motion for post verdict judgment of acquittal questions the sufficiency of the evidence. La.C.Cr.P. art. 821; State v. Hampton, 98-0331, p. 12 (La.4/23/99), 750 So.2d 867, 880, cert. denied, Hampton v. Louisiana, ___ U.S. ___, 120 S.Ct. 504, 145 L.Ed.2d 390 (1999). This court set out the well-settled standard for reviewing convictions for sufficiency of the evidence in State v. Ragas, 98-0011 (La.App. 4 Cir. 7/28/99), 744 So.2d 99, as follows:
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall; Green; supra. "[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." State v. Smith, 600 So.2d 1319 (La.1992) at 1324.
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La. 1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
98-0011 at pp. 13-14, 744 So.2d at 106-107, quoting State v. Egana, 97-0318, pp. 5-6 *365 (La.App. 4 Cir. 12/3/97), 703 So.2d 223, 227-228.
Defendant was convicted of attempted possession of cocaine, a violation of La. R.S. 14:27 and 40:967. La. R.S. 40:967 C provides that "[I]t is unlawful for any person knowingly or intentionally to possess a controlled dangerous substance as classified in Schedule II ...." Cocaine is a Schedule II controlled dangerous substance. La. R.S. 40:964. The "Attempt" statute, La. R.S. 14:27, provides in pertinent part:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
* * * *
C. An attempt is a separate but lesser grade of the intended crime; and any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was actually perpetrated by such person in pursuance of such attempt.
"If the evidence adduced at trial was sufficient to support a conviction of the charged offense, the jury's [responsive] verdict is authorized." State v. Harris, 97-2903, p. 8 (La.App. 4 Cir. 9/1/99), 742 So.2d 997, 1001-1002.
To support a conviction for possession of cocaine, the State must establish that the defendant was in possession of the drug and that he knowingly or intentionally possessed it. State v. Shields, 98-2283 p. 3 (La.App. 4 Cir. 9/15/99), 743 So.2d 282, 283. Guilty knowledge is an essential element of the crime of possession of cocaine. State v. Williams, 98-0806, p. 6 (La.App. 4 Cir. 3/24/99), 732 So.2d 105, 109, writ denied, 99-1184 (La.10/1/99) 748 So.2d 433. The elements of knowledge and intent need not be proven as facts, but may be inferred from the circumstances. State v. Porter, 98-2280, p. 3 (La.App. 4 Cir. 5/12/99), 740 So.2d 160, 162. A trace amount of cocaine in a crack pipe can be sufficient to support a conviction for possession. See Shields, supra; Porter, supra. However, the amount of the substance seized will have some bearing on the defendant's guilty knowledge. State v. Postell, 98-0503, p. 5 (La.App. 4 Cir. 4/22/99), 735 So.2d 782, 785, writ granted, 99-1482 (La.11/12/99), 748 So.2d 1172. In crack pipe cases, "the peculiar nature of the pipe, commonly known as a `straight shooter' and used exclusively for smoking crack cocaine, is also indicative of guilty knowledge." State v. McKnight, 99-0997, p. 4 (La.App. 4 Cir. 5/10/99), 737 So.2d 218, 219; Williams, 98-0806 at p. 7, 732 So.2d at 109. In addition, recent drug use is a factor evidencing guilty knowledge, as is flight or furtive behavior. See Postell, 98-0503 at p. 7, 735 So.2d at 786.
In Shields, supra, this court affirmed the defendant's conviction for possession of cocaine where a crack pipe was discovered in the defendant's shirt pocket during a frisk for weapons. The officer testified that he observed a white residue in the pipe, but the decision does not reflect whether or not he believed it was cocaine residue. As in the instant case, a criminalist testified that the two tests performed on the residue rinsed from the pipe with solvent were positive for the presence of cocaine. The criminalist also testified that the amount of cocaine recovered weighed less than one-hundredth of one gram, unlike in the instant case where the criminalist testified that no attempt was made to weigh the cocaine.
In Porter, supra, this court affirmed the defendant's conviction for possession of cocaine where officers seized a crack pipe in the defendant's waistband during a protective pat-down search. Both arresting officers testified that the pipe contained a visible white residue, but the decision does not reflect whether they believed it was *366 cocaine. A police criminalist testified, as in the instant case, that the residue from the pipe tested positive for the presence of cocaine.
In State v. Guillard, 98-0504 (La.App. 4 Cir. 4/7/99), 736 So.2d 273, this court affirmed the defendant's conviction for attempted possession of cocaine where the arresting officer seized a metal crack pipe from one of the defendant's pants pockets. The arresting officer observed that the crack pipe contained a small amount of crack cocaine residue inside. A police criminalist rinsed the pipe with methanol, as in the instant case, and he stated that gas chromatography testing was positive for cocaine.
In Postell, supra, this Court reversed the defendant's conviction for possession of cocaine, but the facts in Postell are not comparable to those in the instant case. The arresting officer retrieved a crack pipe from the sidewalk where the defendant was standing. The officer said he could not detect the presence of cocaine at the time of the arrest, and the defendant was not charged with possession of cocaine until after tests had been performed. The testing expert stated that the residue found in the crack pipe as a result of the tests performed was not visible to the naked eye, and that the only way he could discover its presence was by performing sensitive scientific tests. This court stated:
The record reveals no evidence of corroborating factors that would lead to the conviction of the defendant based on the circumstantial evidence presented. The evidence in the record, at most, proved that the defendant possessed drug paraphernalia in violation of LSAR.S. 40:1033. As previously discussed, unlike the case of Jones, supra, [94-1261 (La.App. 3 Cir. 5/17/95), 657 So.2d 262] the State did not present evidence of the defendant displaying furtive behavior upon seeing Officer Rice. Nor was there any evidence of recent drug use by the defendant. Finally, the State did not provide evidence establishing that the defendant had in any way attempted to obtain cocaine. All of these factors have been dispositive in courts upholding convictions of defendants for possession of an illegal substance.
There are several reasonable alternative explanations for the [sic] having drug paraphernalia, i.e. from keeping it for someone else to having it with the intent of obtaining drugs in the future. However, without supporting evidence, guilty knowledge, as required to convict a person of possession of cocaine, cannot be gleaned from mere possession of the paraphernalia. The State failed to provide sufficient evidence to establish its burden of proof in this case. Therefore, we must reverse the trial court's conviction.
Postell, 98-0503 at pp. 8-9, 735 So.2d at 787.
In the recent case of State v. Drummer, 99-0858 (La.App. 4 Cir. 12/22/99), 750 So.2d 360 this court affirmed the conviction of a defendant for possession of cocaine, where the defendant was found in possession of two crack pipes, which, the court found, was in and of itself evidence of guilty knowledge by the defendant that he possessed cocaine. In addition, a police officer in Drummer testified that he observed burned cocaine residue on the end of the pipe, although a police criminalist testified that one generally cannot see cocaine in crack pipes. However, the criminalist also testified that she could not recall whether or not she had seen cocaine in the pipe seized from the defendant, and admitted that she could have seen it there. The criminalist testified that the only way she could test for cocaine was to extract it through the solvent rinsing process, and that she could not weigh it because the crime laboratory scale could only weigh items of one-hundredth of a gram or more. There was no testimony that the defendant attempted to flee or that he engaged in any furtive behavior. There was no evidence *367 of recent drug use by the defendant, or evidence that he was attempting to obtain drugs. This court concluded by distinguishing its holding in Postell, supra, on the grounds that, as in Shields, Porter, and Guillard, supra, one of the arresting officers testified that he observed cocaine in the crack pipe.
In the instant case, there was no testimony by either of the arresting officers that cocaine was visible in the crack pipe. However, Officer Warner testified that one end of the pipe was burned. The criminalist made no attempt to measure the amount of cocaine he rinsed from the pipe. Defendant in the instant case did not attempt to flee. Rather, Officer Osborne testified that she complied when the officers motioned for her to come over to their patrol car. There was no evidence that defendant was seeking to obtain cocaine. As for recent illegal drug use by defendant, Officer Osborne said it was obvious defendant was intoxicated, while Officer Warner testified that defendant appeared intoxicated. Yet, Officer Osborne said he did not detect the odor of alcohol on defendant. The inference the State would make from these facts is that the defendant was intoxicated on some other substance, such as cocaine, which would constitute evidence of recent drug use. In addition, in the instant case officers recovered a metal "push rod." Officer Osborne testified, without objection, that the rod was used to push cocaine into the pipe before smoking it. Finally, while the officers recovered a "Bic" cigarette lighter from defendant, there was no indication that she had any cigarettes.
Defendant was intoxicated, apparently on some substance other than alcohol, with the inference being that such substance could possibly be cocaine. She had a pipe with one burned end, which both officers testified, without objection, was a "crack pipe," i.e., a pipe used for smoking crack cocaine. In addition, in the same pocket as the crack pipe, defendant had a metal rod suitable for use to push crack cocaine into the pipe before lighting it, and a lighter with which she could light crack cocaine in the pipe. All defendant was missing was a rock of crack cocaine. This case can be distinguished from Postell, supra, by the circumstantial evidence of recent drug use by defendant in the instant case.
Viewing all of the evidence in light most favorable to the prosecution, any rational trier of fact could have found that defendant knowingly and intentionally possessed a pipe containing crack cocaine residue-all of the essential elements of the offense of possession of cocaine of cocaine. Accordingly, there is no merit to this assignment of error and there was no error in the trial court's denial of her motion for post verdict judgment of acquittal as to her conviction for attempted possession of cocaine.

ASSIGNMENT OF ERROR NO. 2
By this assignment of error, defendant claims the sentence is constitutionally excessive.
La. Const. art. I, § 20 explicitly prohibits excessive sentences; State v. Baxley, 94-2982, p. 4, (La.5/22/95), 656 So.2d 973, 977. Although a sentence is within the statutory limits, the sentence may still violate a defendant's constitutional right against excessive punishment. State v. Brady, 97-1095, p. 17 (La.App. 4 Cir. 2/3/99), 727 So.2d 1264, 1272, rehearing granted on other grounds, (La.App. 4 Cir. 3/16/99); State v. Francis, 96-2389, p. 6 (La.App. 4 Cir. 4/15/98), 715 So.2d 457, 461, writ denied, 98-2360 (La.2/5/99), 737 So.2d 741. However, the penalties provided by the legislature reflect the degree to which the criminal conduct is an affront to society. Baxley, 94-2984 at p. 10, 656 So.2d at 979, citing State v. Ryans, 513 So.2d 386, 387 (La.App. 4 Cir.1987), writ denied, 516 So.2d 366 (La.1988). A sentence is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime. *368 State v. Johnson, 97-1906, pp. 6-7 (La.3/4/98), 709 So.2d 672, 677; State v. Burton, 98-0096, pp. 6-7 (La.App. 4 Cir. 9/1/99), 746 So.2d 74, 79. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. Baxley, 94-2982 at p. 9, 656 So.2d at 979; State v. Webster, 98-0807, p. 3 (La.App. 4 Cir. 11/10/99), 746 So.2d 799, 801; State v. Hills, 98-0507, p. 5 (La.App. 4 Cir. 1/20/99), 727 So.2d 1215, 1217.
In reviewing a claim that a sentence is excessive, an appellate court generally must determine whether the trial judge has adequately complied with statutory guidelines in La.C.Cr.P. art. 894.1, and whether the sentence is warranted under the facts established by the record. State v. Trepagnier, 97-2427, p. 11 (La. App. 4 Cir. 9/15/99), 744 So.2d 181, 189; State v. Robinson, 98-1606, p. 12 (La.App. 4 Cir. 8/11/99), 744 So.2d 119, 127. If adequate compliance with La.C.Cr.P. art. 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of the case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. State v. Ross, 98-0283, p. 8 (La.App. 4 Cir. 9/8/99), 743 So.2d 757, 762; State v. Bonicard, 98-0665, p. 3 (La.App. 4 Cir. 8/4/99), 752 So.2d 184, 185-6.
In State v. Major, 96-1214 (La.App. 4 Cir. 3/4/98), 708 So.2d 813, writ denied, 98-2171 (La.1/15/99), 735 So.2d 647, this court stated:
The articulation of the factual basis for a sentence is the goal of Art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, resentencing is unnecessary even when there has not been full compliance with Art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The reviewing court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. La. C.Cr.P. art. 881.4(D).
96-1214 at p. 10, 708 So.2d at 819.
In State v. Soraparu, 97-1027 (La.10/13/97), 703 So.2d 608, the Louisiana Supreme Court stated:
On appellate review of sentence, the only relevant question is "`whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.'" State v. Cook, 95-2784, p. 3 (La.5/31/96), 674 So.2d 957, 959 (quoting State v. Humphrey, 445 So.2d 1155, 1165 (La. 1984)), cert. denied, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996). For legal sentences imposed within the range provided by the legislature, a trial court abuses its discretion only when it contravenes the prohibition of excessive punishment in La. Const. art. I, § 20, i.e., when it imposes "punishment disproportionate to the offense." State v. Sepulvado, 367 So.2d 762, 767 (La.1979). In cases in which the trial court has left a less than fully articulated record indicating that it has considered not only aggravating circumstances but also factors militating for a less severe sentence, State v. Franks, 373 So.2d 1307, 1308 (La.1979), a remand for resentencing is appropriate only when "there appear[s] to be a substantial possibility that the defendant's complaints of an excessive sentence ha[ve] merit." State v. Wimberly, 414 So.2d 666, 672 (La. 1982).
Id.
Pursuant to La. R.S. 14:27 and 40:967 C, defendant was subject to a term of imprisonment with or without hard labor for not more than two and one-half years (thirty months), and a fine or not more than twenty-five hundred dollars. The trial court sentenced defendant to thirty months at hard labor, the maximum term of imprisonment, with credit for time served. The court suspended the sentence, and placed *369 defendant on active probation for five years, with nine special conditions, including: (5) pay a $200 fee to the intensive probation/drug court; (6) pay $1,000 to the judicial expense fund; (7) pay $50 to the Louisiana Commission on Law Enforcement; (8) pay $50 to the Crime Victims' Reparation Board; and (9) pay $20 per month to the Department of Probation to defer the cost of supervision. The trial court waived court costs due to defendant's indigency status.
At the sentencing hearing, the trial court noted that a presentence investigation report reflected that defendant was a first-felony offender, and the report recommended that defendant be given a suspended sentence. The trial court did give defendant a suspended sentence. However, defendant failed to report to the probation office, and she was arrested on a capias April 15, 1999, three weeks after sentencing. The trial court revoked defendant's probation on July 23, 1999, and made her sentence of thirty months at hard labor executory.
In sentencing her, the court noted that the then thirty-three year old defendant had a crack cocaine problem. The presentence investigation report shows two prior municipal convictions, for theft/possession of stolen things in June 1996, and for lewd conduct in March 1998. Defendant has one child, a son, born in May 1987, who lives by his choice with his father in Texas. Defendant admitted that she had a cocaine problem, but denied being an addict. She said she had been using cocaine for two years, and felt that her neighborhood and the bar she worked in were the source of her problem. The report notes that defendant has serious health problems caused by her sickle cell anemia, which, it stated, more than likely would preclude her from being accepted in an in-patient substance abuse treatment program. In sentencing defendant, the court told defendant to do what she "was supposed to do out there," meaning comply with the conditions of her probation.
The recent case of State v. Recasner, 98-2518 (La.App. 4 Cir. 12/22/99), 750 So.2d 336 presented a sentencing scenario almost identical to the one presented by the instant case. The defendant was charged with possession of cocaine, but convicted of attempted possession, in the same section of court as in the instant case. The trial court ordered a presentence investigation report, which, it noted, recommended a suspended sentence and probation with special conditions, just as in the instant case. As in the instant case, the defendant was a first-felony offender. Also as in the instant case, the trial court failed to state for the record any additional aggravating or mitigating factorsexcept that in the instant case the court noted defendant's cocaine problem. This court found that it was clear from the record that the court had reviewed the presentence investigation report, and thus was aware of all factors, both aggravating and mitigating. This court concluded that the sentence was not constitutionally excessive.
In the instant case, the trial court apparently felt that, with this defendant, it needed to sentence her to the maximum term of imprisonment to get her to comply with the terms of her probation and dissuade from continuing a life of cocaine addiction and prison. As defendant failed to even report to the probation office, apparently something more was needed. The trial court read the presentence investigation report, and thus was familiar with the mitigating and aggravating factors. The trial court attempted to tailor the sentence to promote defendant's best interests, with an end toward allowing her to avoid any prison time if she would come to terms with her addiction by adhering to the terms of her probation. Thus, it cannot be said that the thirty-month sentence was nothing more than the purposeless imposition of pain and suffering  or that defendant's sentence was constitutionally excessive.
*370 Defendant also complains of the fines imposed as conditions of her probation. As defendant's probation has been revoked, this issue is moot.
There is no merit to this assignment of error.
For the foregoing reasons, the conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
JONES, J., concurs in part and dissents in part with reasons.
JONES, J. concurring in part and dissenting in part with reasons.
I agree that Jana Monette's conviction should be affirmed; however, I must dissent and express my disagreement with the majority's determination that her sentence is not excessive.
This Court very seriously errs when discussing the post sentencing revocation of Monette's probation instead of looking at the revocation of her probation we should look at the sentence on the day it was imposed. On that date, the trial court was presented with a crack cocaine addict who was a first offender, yet he sentenced her to a maximum penalty of 30 months and suspended that sentence. In addition, the court went on to place conditions of probation upon Monette with which she could not possibly comply with. The court ordered her to pay $2500, an average of $41.67 per month for 60 months. Further, the court required her to seek drug treatment (at her expense), with the knowledge that her health precluded successful treatment for her addiction.
Courts simply cannot place additional responsibilities upon known drug addicts, provide no treatment plan for these people, and then send them to jail for the maximum term of imprisonment when they relapse. Such action constitutes cruel and unusual punishment and a violation of our constitution.
Monette was convicted of attempted possession of cocaine. The quantity of cocaine in question was too minute to qualify. Thus such a harsh sentence in this case is in fact nothing more than the meaningless imposition of pain and suffering. For these reasons, I dissent.
NOTES
[1] A supplement filed by the State reflects that, on July 23, 1999, defendant's probation was revoked and her sentence made executory, with the trial court's recommendation that she undergo substance abuse counseling during her incarceration.