809 So.2d 472 (2002)
STATE of Louisiana
v.
Amy ALBERCHT, a/k/a Amy Schmidt.
No. 2001-KA-1664.
Court of Appeal of Louisiana, Fourth Circuit.
January 30, 2002.
*473 Harry F. Connick, District Attorney, Julie C. Tizzard, Assistant District Attorney, New Orleans, Counsel for Plaintiff/Appellee.
Mary Constance Hanes, Louisiana Appellate Project, New Orleans, Counsel for Defendant/Appellant.
Court composed of Chief Judge WILLIAM H. BYRNES, III, Judge MIRIAM G. WALTZER, and Judge DENNIS R. BAGNERIS, SR.
WILLIAM H. BYRNES, III, Chief Judge.
Amy Albercht, also known as Amy Schmidt ("Albercht"), appeals her conviction and sentence for attempted possession of pornography involving a juvenile. She also was sentenced after pleading guilty to contributing to the delinquency of a juvenile. We affirm.
On January 19, 2001, Ms. Albercht was charged with possession of child pornography in violation of La. R.S. 14:81.1(A)(3), and contributing to the delinquency of a juvenile by enticing her to perform sex acts in violation of La. R.S. 14:92(A)(7). (Ms. Albercht was charged on count one along with George C. Bergeron, who was also charged with molestation of a juvenile.)
On March 1, 2001, Ms. Albercht withdrew her earlier not guilty plea on count two only and entered a plea of guilty as charged under North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). The trial court denied the defense attorney's motion to quash count one. After a trial on March 8, 2001, a twelve-member jury found Ms. Albercht guilty of attempted possession of pornography involving a juvenile. The trial court ordered a pre-sentencing investigation ("PSI") report, and on May 29, 2001, Ms. Albercht was sentenced to serve five years without benefit of parole, probation, or suspension of sentence ("without benefits") on the attempted possession of child pornography conviction and two years on the contributing to the delinquency of a juvenile conviction. The sentences are to run concurrently. Ms. Albercht's motion to reconsider the sentence was denied, and her appeal followed.
At trial I.S., the daughter of the defendant, testified that she was born on November 15, 1983, and that she lived with her mother and her mother's boyfriend, George Bergeron, from her fifteenth birthday up until the time her mother was arrested when the daughter was sixteen. I.S. testified that Mr. Bergeron gave her a cell phone, a VCR, a computer, a credit card, and a video camera. The video camera was used to photograph her. I.S. stated:
... they wanted me to get into bikinis and stuff and change into all kind of clothes, change different [sic] clothes, get into skirts and dance nude, do nasty dances, sit in a chair and do sexual dances.
*474 While she was being filmed, I.S. said her mother was "sitting in a rocking chair coloring and watching t.v. and laughing." George Bergeron also videotaped I.S. having sex with her boyfriend in the bedroom while her mother was nearby. After I.S. told the social worker at her school what happened at her home, she spoke to a police officer. The State offered I.S.'s birth certificate into evidence.
A.J. testified that he met I.S. at a high school football game, and he began dating her in October of 2000. He described an incident at I.S.'s house:
Me and [I.S.] ... was, you know, fooling around, kissing each other and having sex and her father walked up upon her and I, surprised me, caught me off guard with a camera, filming me and her... having sex, and that scared me ... and I didn't know what to do so I was frightened because I had heard a lot of things ... he had in the house to ... threaten people with.
A.J. said I.S.'s mother was in the room watching television while the video was being made and she paid no attention to them. A.J. stopped going to I.S.'s house after the incident, and he also told the school social worker what had happened.
Detective Matthew Riles testified that after speaking to the social worker and interviewing I.S. and A.J., he obtained a search warrant for Ms. Albercht's residence. When the search yielded a video camera, photographs, and videotape, Ms. Albercht was arrested. The videotape was shown to the jury, and it is part of the record on appeal.

Statute Provides No Minimum Amount for Imposition of a Fine
On a review for errors patent, we note Ms. Albercht's sentence for attempted possession of child pornography. Under La. R.S. 14:81.1, possession of child pornography, a fine of not more than ten thousand dollars must be imposed. Ms. Albercht was convicted of attempted possession of child pornography under La. R.S. 14:27(81.1),[1] and a fine of not more than five thousand dollars was the maximum amount that could have been imposed along with the prison term. The trial court did not impose a fine.
Pursuant to La.C.Cr.P. art. 882A, a illegally lenient sentence can be noticed or recognized by the appellate court sua sponte without the issue being raised by the State in State v. Williams, XXXX-XXXX (La.11/29/01), 800 So.2d 790. Williams retroactively overrules State v. Jackson, 452 So.2d 682 (La.1984) and its progeny, including State v. Fraser, 484 So.2d 122 (La.1986).[2] In reference to La. R.S. *475 15:301.1,[3] the Louisiana Supreme Court stated that: "When an illegal sentence is corrected, even though the corrected sentence is more onerous, there is no violation of the defendant's constitutional rights." Id., 800 So.2d at 798. The Louisiana Supreme Court found that:
Viewing these statutory provisions in light of the defendant's due process rights and his recognized right in Louisiana to seek appellate review of his conviction, we find no impediment to the Legislature's statement that La.Rev. Stat. Ann. 15:301.1 was enacted to change the law in State v. Jackson and its progeny. No portion of La.Rev.Stat. Ann. § 15:301.1 conflicts with a constitutional principle to which the legislative enactment must yield. Paragraphs A, B, and C of La.Rev.Stat. Ann. § 15:301.1 simply provide for correction of illegally lenient sentences and neither increase a defendant's sentencing exposure nor increase a legal sentence. Accordingly, we find that the provisions of this legislative enactment do not impede the defendant's constitutional right to appeal.

Id., 800 So.2d at 799-800.
The Louisiana Supreme Court stated:
... [T]his paragraph [La.R.S. 15:301.1(A)] self-activates the correction and eliminates the need to remand for a ministerial correction of an illegally lenient sentence which may result from the failure of the sentencing court to impose punishment in conformity with that provided in the statute.

*476 Id., 800 So.2d at 799.
However, the Supreme Court explained:
... As noted earlier, we recognized that this provision [La. R.S. 15:301.1] directs that sentences that require statutory restrictions on parole, or suspension of sentence are "deemed to contain [those] provisions," ... whether or not the sentencing court pronounces those restrictions at the time of initial sentencing. It is clear from the statutory language that this proviso is self-activated, eliminates the remand for ministerial correction of sentence, and requires no notice to the defendant.... Simply stated, the provisions of Paragraphs A and C [of La. R.S. 15:301.1] do not call for amendment as no correction is required. Rather, that which was legislatively mandated at the time of sentencing is recognized as having existed statutorily without pronouncement being necessary. Accordingly, we find it was appropriate for the appellate court in the present case to so note that "[a]t least six months of the [defendant's] sentence of imprisonment imposed shall be with or without benefit of probation, parole, or suspension of sentence." La.Rev.Stat. Ann. § 14:98(D)(1). However, because of the complete failure of the sentencing court to abide by any of the sentencing requirements of La.Rev.Stat. Ann. § 14:98(D)(1) and because an element of sentencing discretion existed as regards the length of sentence served without benefit of parole, probation, or suspension of sentence, it was necessary for the appellate court to remand the matter to the trial court for re-sentencing. [Emphasis added.]

Id., 800 So.2d at 801.
Also, the Louisiana Supreme Court noted:
... the authority of the appellate court to recognize sentencing error arises in part from the self-activating provisions of La.Rev.Stat. Ann. § 15:301.1(A) (i.e., the failure to impose sentence without benefit of parole, probation, or suspension of sentence) and under the general provisions of La.Code Crim. Proc. Ann. art. 882 (the sentencing errors other than those which fall under La.Rev.Stat. Ann. § 15:301.1(A)). Under the provisions of article 882, "[a]n illegal sentence may be corrected at any time by ... an appellate court on review."... [Emphasis added.]

Id., 800 So.2d at 802.
In footnote 6, the Louisiana Supreme Court referred to State ex rel. Pierre v. Maggio, 445 So.2d 425 (La.1984), and remarked that:

State ex rel. Pierre v. Maggio, ... has little application, if any, to the present case. The Pierre decision prohibited the Department of Public Safety and Corrections ("DOC") from interpreting terms and conditions of imprisonment. Thus, when a trial court omitted parole restrictions in the pronouncement of sentence for a crime the penalty of which carried parole restrictions, under Pierre, the DOC records had to track the sentence imposed, for the "custodian's obligation is to see that the sentence imposed is the sentence served." Id. at 425. Under La.Rev.Stat. Ann. § 15:301.1, DOC may safely determine an inmate's parole eligibility by reference to the statute under which sentence was imposed.

Id., 800 So.2d at 797.
In his concurrence, Justice Pro Tempore Lobrano asserted that: "The majority also correctly finds that the sua sponte correction of an illegal sentence by an appellate court violates no constitutional provisions simply because no one has a constitutional right to an illegal sentence." Id., 800 So.2d at 803. The appellate court may *477 recognize an error without remand where there is no element of sentencing discretion as stated in Williams, id.
In the present case the trial court has the discretion to determine the amount of the fine up to $5,000. Although a maximum fine is provided, the minimum fine is not delegated by the statute, La. R.S. 40:966(B)(2). Therefore, the trial court has discretion to impose a fine with no minimum up to $5,000. Where there is no minimum fine, the trial court did not abuse its discretion in deciding to omit the fine, and no error patent exists.

Excessive Sentence
Ms. Albercht argues that the sentence of five years without benefits is excessive under the circumstances. She argues that the trial court should have considered her age, lack of criminal record, and her obvious lack of power over her circumstances.
On the attempted possession of child pornography conviction, which carries a penalty of up to five thousand dollar fine and a prison term of one to five years without benefits, Ms. Albercht received the maximum term of imprisonment at hard labor on her conviction.
A sentence may be reviewed for constitutional excessiveness even though it is within statutory guidelines. State v. Cann, 471 So.2d 701, 703 (La.1985); State v. Monette, 99-1870 (La.App. 4 Cir. 3/22/00), 758 So.2d 362. In reviewing a sentence for excessiveness, the Court must first determine whether the trial court complied with La.C.Cr.P. art. 894.1 in imposing the sentence and then determine whether the sentence is too severe given the circumstances of the case and the defendant's background. State v. Lobato, 603 So.2d 739, 751 (La.1992). Full compliance with La.C.Cr.P. Art. 894.1 is not required where the record clearly shows an adequate factual basis for the sentence imposed as the goal of the article is an articulation of a factual basis for the sentence rather than rigid or mechanical compliance with its provisions. Id. If the sentence needlessly imposes pain and suffering and is grossly out of proportion to the seriousness of the offense so as to shock our sense of justice, then it may be determined to be unconstitutionally excessive in violation of La. Const. art. I, § 20 (1974). Id. However, a sentence imposed will not be set aside absent a showing of abuse of the trial court's wide discretion to sentence within statutory limits. Id.
In the present case, at sentencing when the trial court stated that the victim was fifteen, the defense attorney interrupted, saying that she was almost seventeen. The trial court continued:
I'll be honest with you, it doesn't matter to me if it was her 35-year-old daughter, it just seems totally inappropriate, unacceptable, and it does seem criminal for a mother to sit down there and sort of encourage ... for her daughter to get naked in front of a video camera with her husband and allow the child to act and perform sexual conduct in their presence for their own benefit, for their own gratification....
She is a first felony offender. This particular offense was on video so the court actually hadI had the opportunity to observe with the jury what it was that the child was engaged in and what it was that the mother was allowing her child to engage in, encouraging it. In fact, it almost was like a spectacle because as I recall, at one point she opened up the soft drink bottle and started drinking and I guess the only thing we were missing was the popcorn that they were going to probably divvy out or sell during the performance.

*478 It's very difficult to have sympathy for you because it's hard for me to feel that you really and truly love your daughter to allow her to engage in that sort of activity.
The judge's comments indicate his conclusions on seeing Ms. Albercht at most taking part in and at least condoning the sexual abuse of I.S. on the videotape.
The defense argues that Ms. Albercht's age and first offender status should be considered by this Court as factors when evaluating the excessiveness of Ms. Albercht's sentence. Ms. Albercht was born in 1948, and was 51 years old when the tape was made. It is reasonable to infer from her age that she understood her participation in the exploitation of her daughter. The pre-sentence investigation ("PSI") report shows that Ms. Albercht told I.S. not to tell anyone of the videotaping or sex because they could all go to jail. According to the PSI, Ms. Albercht was charged with armed robbery in 1980, and the case was dropped because of noncompliance of the witnesses. She has no history of employment.
The defense also maintains that the video indicates that Ms. Albercht was completely powerless and passive during the episode on tape and that she is certainly not one of the worst sort of offenders for whom maximum sentences are reserved.
The video shows that Ms. Albercht was laughing and making small talk while her daughter does her "nasty dance" in front of a video camera. The fashion show consists of I.S. taking off and putting on many bikini bathing suits and a few dresses, which Ms. Albercht helps her daughter put on or take off. When I.S. is being videotaped having sex with A.J., the telephone rings, and Ms. Albercht answers the telephone. Then she asks I.S. if she wants to come to the phone, and I.S. instructs her mother to have the caller try later. The part of the house shown in the video consists of two small connected bedrooms. During the "fashion show" episode, the defendant sits in one room in a rocking chair, I.S. prances around the middle of the room, and the man taking the videotape is in the second room. When I.S. is taped having sexual intercourse with A.J., they are in the second room. A.J. testified that Ms. Albercht was in the same room; however, even if she were in the first room, she would be only about twenty feet from the second room. Furthermore, Ms. Albercht held the camera during one brief sequence while I.S. spoke into the camera.
The video indicates that Ms. Albercht did not say one word to halt the sexual abuse of her daughter. She laughed, drank a soft drink, made comments, and took part in the videotaping. She was involved in the activity, both actively and passively. If she were powerless, it was because she chose to be, and it reasonably can be found that she is one of the worst offenders. The sentence is not grossly out of proportion to the seriousness of the offense so as to shock our sense of justice. The trial court did not abuse its discretion in sentencing her to the maximum term under the statute.
Accordingly, the defendant's convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] La. R.S. 14:81.1 provides in pertinent part:

E. Whoever commits the crime of pornography involving juveniles shall be fined not more than ten thousand dollars and be imprisoned at hard labor for not less than two years or more than ten years, without benefit of parole, probation, or suspension of sentences. [Emphasis added.]
La. R.S. 14:27 provides in pertinent part:
(3) In all others cases [the defendant] shall be fined or imprisoned or both, in the same manner as for the offense attempted; such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both. [Emphasis added.]
La. R.S. 14:92 provides in pertinent part:
D. Whoever is charged and convicted of contributing to the delinquency of a juvenile under (7) of Subsection A of this Section shall be fined not more than one thousand dollars or imprisoned with or without hard labor for not more than two years, or both. [Emphasis added.]
[2] These cases held that the reviewing court will not correct an illegally lenient sentence on appeal when the State did not raise the issue.
[3] La. R.S. 15:301.1 provides:

§ 301.1 Sentences without benefit or probation, parole, or suspension of sentence; correction
A. When a criminal statute requires that all or a portion of a sentence imposed for a violation of that statute be served without benefit of probation, parole, or suspension of sentence, each sentence which is imposed under the provisions of that statute shall be deemed to contain the provisions relating to the service of that sentence without benefit of probation, parole, or suspension of sentence. The failure of a sentencing court to specifically state that all or a portion of the sentence is to be served without benefit of probation, parole, or suspension of sentence shall not in any way affect the statutory requirement that all or a portion of the sentence be served without benefit of probation, parole, or suspension of sentence.
B. If a sentence is inconsistent with statutory provisions, upon the court's own motion or motion of the district attorney, the sentencing court shall amend the sentence to conform to the applicable statutory provisions. The district attorney shall have stranding to seek appellate or supervisory relief for the purpose of amending the sentence as provided in this Section.
C. The provisions of this Section shall apply to each provision of law which requires all or a portion of a criminal sentence to be served without benefit of probation, parole, or suspension of sentence, or of any one of them, any combination thereof, or any substantially similar provision or combination of substantially similar provisions.
D. Any amendment to any criminal sentence as authorized by the provisions of this Section shall be completed within one hundred eighty days of the initial sentencing.
In State v. Williams, id., the Louisiana Supreme Court noted:
The plain language of Paragraph (D) subjects sentencing amendments "authorized by the provisions of this Section" to the 180 day time limitation. As pointed out, no amendment of the defendant's sentence was accomplished through any provision of La. Rev.Stat. Ann. § 15:301.1: sentencing errors akin to those delineated under Paragraph A are not subject to amendment; and those errors recognized in Paragraph B were not raised either by the sentencing court or the district attorney, the method authorized in La.Rev.Stat. Ann. § 15:301.1(B). Accordingly, whatever time limitation provided in Paragraph D was inapplication to the appellate court under the particular procedural facts present. [Emphasis added.]
Id., 800 So.2d at 802.