COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

VERSUS

CRAIG FRANCOIS

**********
APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 04-228,599
HONORABLE CHARLES LEE PORTER, DISTRICT JUDGE
**********

GLENN B. GREMILLION
JUDGE

**********

Court composed of Glenn B. Gremillion, Elizabeth A. Pickett, and J. David Painter, Judges.

AFFIRMED WITH INSTRUCTIONS.

Hon. J. Phil Haney
District Attorney
300 Iberia Street, Suite 200
New Iberia, LA 70560
(337) 369-4420
Counsel for Plaintiff/Appellee:
    State of Louisiana

Jeffrey J. Trosclair
Assistant District Attorney
St. Mary Parish Courthouse, 5th Floor
Franklin, LA 70538
(337) 828-4100, Ext. 550
Counsel for Plaintiff/Appellee:
    State of Louisiana

**Mark O. Foster**
**Foster & Foster**
**P. O. Box 2057**
**Natchitoches, LA 71457-2057**
**(318) 572-5693**
**Counsel for Defendant/Appellant:**
    **Craig Francois**

GREMILLION, Judge.

In this case, the defendant, Craig Francois, was convicted of one count of battery of a correctional facility employee, a violation of La.R.S. 14:34.5, and sentenced to serve eighteen months at hard labor without benefit of probation, parole, or suspension of sentence, with credit for time served since August 9, 2004. He is now before this court on appeal asserting that the evidence was insufficient to convict him of battery of a correctional facility officer, that the sentence imposed was excessive, and that the trial court erred in providing a defective definition of the crime when instructing the jury. For the following reasons, we affirm.

## FACTS

On August 9, 2004, Defendant was in a cell block of a holding area at the St. Martin Parish Correctional Facility. Deputy Shelly Picard had arrived for her shift at 6:00 a.m. and informed the warden, Helen B. Wiltz, that since her arrival, Defendant had been banging on the door and complaining that he should be released. Warden Wiltz instructed Deputy Picard to get Defendant out of his cell block and bring him to her office. Defendant was not shackled or handcuffed at the time he entered Warden Wiltz's office.

Warden Wiltz testified that Defendant was very agitated and was claiming that he was being illegally detained and should be released. Warden Wiltz said she informed him that he had been sentenced and that she had no authority to release him at that time. Due to his subsequent agitated behavior, Warden Wiltz

1

believed she would have problems with Defendant if she returned him to his cell that housed twelve other inmates. Accordingly, she instructed Deputy Picard to take him to the special restraint room to allow him to calm down.

Deputy Gary Talley assisted Deputy Picard in bringing Defendant to the restraint room. The testimony reflects that Defendant did not cause any disturbance as he was escorted to the special restraint room, and he was not shackled or handcuffed and was free to move around the room. According to the witnesses, after he was placed in the room and the deputies had walked away, he began banging and kicking on the door and hollering and screaming. Although the deputies asked him to stop, Defendant continued to bang and kick on the door, causing disharmony among the other inmates. The evidence shows that eventually, the vibration from Defendant's kicking and banging on the door caused a light bulb to fall from a fixture located inside or just outside the room. Because Defendant's continued behavior was becoming a security issue, Warden Wiltz gave orders to restrain him with handcuffs and shackles and to put him in a restraint chair to prevent him from banging on the door.

Defendant was handcuffed by Deputy Talley through the hatch on the door and given the verbal command to go to the back of the room and face the wall. He complied. The deputies said that they entered the room and that Deputies Talley and Noel stood with Defendant while Deputies Picard and Kim Duplantis placed the restraint chair in the room. They said Defendant was asked to sit in it, and initially, he sat down. The testimony reflects that Defendant stood back up before the deputies could strap him in and he began swinging, kicking, and pushing even though he was

2

handcuffed at the time. According to their testimony, during the scuffle, Deputy Talley was struck in the hand and Deputy Noel was struck in the stomach by Defendant. Deputies Noel and Talley began to wrestle Defendant to the floor. The deputies testified that in an attempt to subdue Defendant, Deputy Duplantis sprayed Defendant with pepper spray.

Deputies Picard and Noel said that Captain Marjorie Alleman was also in the room with an electric shield. Those deputies, along with Deputy Talley said that before Captain Alleman was able to use the shield, Defendant pushed her against the wall with his feet, causing injury to her arm. Deputy Talley testified that once Defendant was restrained on the floor, Deputy Picard placed shackles on the Defendant's ankles. The deputies were ultimately able to get Defendant into the chair.

Marjorie Boudreaux, a licensed practical nurse at the St. Martin Parish Sheriff's Office, testified that she evaluated the deputies, as well as Defendant, for injuries following the incident. She said that Captain Allemon had some swelling in her wrist and was subsequently sent to St. Martin Hospital for further evaluation. Nurse Boudreaux observed a scratch on Deputy Noel's forehead and a scratch on Deputy Talley's hand, to which she administered first aid.

Defendant testified and his version of the event was somewhat different from that of the warden and deputies. He said that when he was facing the wall, prior to the introduction of the restraining chair, a third person had him by the collar while Deputies Talley and Noel were on each side of him. According to Defendant, there was some confusion as to what the deputies wanted him to do. He explained that

3

Deputy Talley was telling him to step back while Deputy Noel was telling to him stay against the wall. Meanwhile, he said that the person behind him was pulling on his jumper.

Defendant claimed that he was unaware that the restraining chair was in the room, and that when the back of his calves hit it, he did not know that it was the restraining chair. He testified that he began resisting because he had no idea what was going on and had become alarmed and fearful. He maintained that the deputies did not tell him that they were going to place him in the chair. Defendant also testified that Captain Alleman shocked him on the arm with the shock shield, so he attempted to grab the shield to prevent her from shocking him again. But Defendant somewhat recanted his statement, explaining that the shield made an electrical sound, but that it really did not hit him at any time.

Defendant maintained that he did not attempt to assault anyone at any time. According to him, he was merely defending himself from excessive force, and he denied hitting, pushing, or kicking the deputies. He also testified that he did not intend to hurt any of the deputies. On cross examination, he admitted that Deputy Noel may have been inadvertently kicked when Deputy Noel raised up his foot. He denied, however, hitting Deputy Talley, stating that Deputy Talley had grabbed him around the neck, and thus, he was unable to hit him.

**ERRORS PATENT**

We review all appeals in accordance with La.Code Crim.P. art. 920 for errors patent on the face of the record. After reviewing the record, we find there is

4

one error patent. We will also discuss another issue that has brought concern to the courts of appeal throughout the state.

We initially begin our discussion of errors patent by considering whether the trial court may have imposed an illegally lenient sentence by failing to impose a fine. The pertinent penalty provision mandates that the offender be fined *not more than* $1,000.00 *and* imprisoned for one to five years. La.R.S. 14:34.5(B)(2). The trial court did not impose a fine in the instant case. Because no minimum amount is set for the fine, it is questionable whether the failure to impose a fine renders the sentence illegally lenient. Both the Fourth and Fifth Circuit, Courts of Appeal have recognized a sentence as illegally lenient under similar circumstances. *State v. Jackson*, 04-728 (La.App. 5 Cir. 12/14/04), 892 So.2d 71, *writ denied*, 05-0548 (La. 1/9/06), 918 So.2d 1033; *State v. Collins*, 04-751 (La.App. 5 Cir. 11/30/04), 890 So.2d 616; *State v. Clemons*, 01-1032 (La.App. 5 Cir. 2/26/02), 811 So.2d 1047, *writ denied sub nom.*, 02-0866, 02-0918 (La. 11/22/02), 834 So.2d 972, *cert. denied*, 538 U.S. 1063, 123 S.Ct. 2228 (2003), and *State v. Adams*, 99-2123 (La.App. 4 Cir. 1/24/01), 779 So.2d 113. We respectfully disagree with our colleagues on those courts.

In only one of the above-cited cases, *Clemons*, did the court actually remand for imposition of a fine. The appellate court found that the trial court erred in failing to impose a fine of "not more than ten thousand dollars," as required by La.R.S. 14:95(E). *Clemons*, 811 So.2d at 1050. The defendant in *Clemons* sought review by a writ application to the supreme court, but that writ was denied. *State v. Phillips*, 02-866, 02-918 (La. 11/22/02), 834 So.2d 972, *cert. denied*, 539 U.S. 918,

5

123 S.Ct. 2283 (2003), *cert. denied*, 538 U.S. 1063, 123 S.Ct. 2228 (2003).[1]

Dissenting from the denial of the writ in that case, Chief Justice Calogero stated that he would grant the writ to review "the defendants' contentions that an appellate court may not tamper with a district court's failure to impose a mandatory fine unless the state is seeking relief by appeal or writ application." *Id.* at 973. Justice Calogero also noted the following about the fine provided for in La.R.S. 14:95(E): "Whether this statute mandates a fine in some minimum amount is a question not entirely free from doubt. After all, a fine of zero qualifies as 'not more than ten thousand dollars.'" *Id.* at 973, n.1.

However, in *Jackson*, 892 So.2d 71, the fifth circuit recognized that the trial court erred in failing to impose a fine under La.R.S. 40:966, but declined to amend the defendant's sentence. The court addressed the issue as follows:

> The defendant received an illegally lenient sentence, because the trial court failed to impose a fine. The defendant was convicted of possession with intent to distribute marijuana, which requires a fine of not more than $50,000.00. LSA-R.S. 40:966(B)(2).

> This Court has found that the trial court's failure to impose a fine where the statute requires a fine "of not more than" a stated amount, as in LSA-R.S. 40:966(B)(2), to be an illegally lenient sentence. *See, State v. Fletcher*, 03-60, p. 9 (La.App. 5 Cir. 4/29/03), 845 So.2d 1213, 1222, and *State v. Qutoum*, 02-780, p. 11 (La.App. 5 Cir. 1/28/03), 839 So.2d 323, 333-334, *writ denied*, 03-595 (La.5/30/03), 845 So.2d 1059. While LSA-R.S. 40:966(B)(2) requires a term of imprisonment and a fine, the statute does not specifically set forth a minimum fine.

> In *State v. Washington*, 03-1135, p. 11 (La.App. 5 Cir. 1/27/04), 866 So.2d 973, 984-985, this Court recognized its permissive authority to correct an illegally lenient sentence, despite the failure of either party to raise the issue in the trial court or on appeal, but refrained from amending the defendant's sentence to impose a fine. The State notes in

---

[1] Defendants, Clemons and Phillips, sought writs in the same writ application.

its brief that the trial court failed to impose a fine. However, the State did not object to the trial court's failure to impose a fine. Therefore, we will refrain from amending the defendant's sentence to impose a fine.

*Id.* at 77-78.

In another case, our colleagues on the fourth circuit declined to recognize an error patent in a similar circumstance. In *State v. Albercht*, 01-1664 (La.App. 4 Cir. 1/30/02), 809 So.2d 472, the fourth circuit noted in its error patent review that the trial court did not impose a fine for attempted possession of child pornography. The court noted that the penalty provision for the completed offense of possession of child pornography called for a fine of not more than ten thousand dollars, and the penalty for the attempted offense called for a fine of not more than five thousand dollars. After discussing the appellate court's ability to correct an illegally lenient sentence, the fourth circuit concluded that no error patent existed:

In the present case the trial court has the discretion to determine the amount of the fine up to $5,000. Although a maximum fine is provided, the minimum fine is not delegated by the statute, La.R.S. 40:966(B)(2). Therefore, the trial court has discretion to impose a fine with no minimum up to $5,000. Where there is no minimum fine, the trial court did not abuse its discretion in deciding to omit the fine, and no error patent exists.

*Id.* at 477.

We agree with the esteemed Chief Justice and those cases cited above from the fourth and fifth circuits and decline to recognize the failure of the trial court to impose a fine as error patent. It is in the trial court's vast discretion to impose a fine of $0. Therefore, we find that when the trial court does not impose a fine in a situation where the statute authorizes a fine of "not more than" an amount, it impliedly imposes a fine of $0, and is not an error patent.

7

Next, the trial court gave Defendant erroneous advice at sentencing as to the time period for filing post-conviction relief:

> Because the Court has imposed a sentence of incarceration, it is my obligation to advise you that you have what are called post conviction relief rights. The sentence that I have just imposed against you will become final in five days. Thereafter, you will have two years within which to file any proceedings in writing in this Court to ask that any error be corrected in these proceedings, being your conviction or your sentence.

The minutes of sentencing indicate that the trial court advised Defendant that he had "two years from this date" to file any post conviction relief motions.

According to La.Code Crim.P. art. 930.8, the two-year prescriptive period begins to run when the defendant's conviction and sentence become final under the provisions of La.Code Crim.P. arts. 914 or 922. Articles 914 and 922 provide for the time period for filing an appeal, as well as the time at which an appeal or supreme court judgment becomes final. According to the time periods set forth in those articles, the earliest a conviction and sentence can become final is *thirty* days after the imposition of sentence, provided that the defendant files neither an appeal or a motion to reconsider sentence. Thus, the trial court in the present case erroneously advised Defendant that the two-year prescriptive period for filing post-conviction relief would begin to run five days after the sentence was imposed. Accordingly, the trial court is directed to inform Defendant of the correct prescriptive period by sending appropriate written notice to Defendant within ten days of the rendition of this opinion. Additionally, the trial court is instructed to file written proof of the notice in the record of these proceedings. *State v. Roe,* 05-116 (La.App. 3 Cir. 6/1/05), 903 So.2d 1265, *writ denied*, 05-1762 (La. 2/10/06), 924 So.2d 163.

8

**SUFFICIENCY OF EVIDENCE**

In his first assignment of error, Defendant argues that the evidence was insufficient to convict him of battery of a correctional facility officer. More specifically, Defendant contends that the evidence does not show that battery was committed.

The analysis for a claim of insufficient evidence is well-settled:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

The elements of the crime at issue are set forth in La.R.S. 14:34.5 (A)(1), which reads:

> Battery of a correctional facility employee is a battery committed without the consent of the victim when the offender has reasonable grounds to believe the victim is a correctional facility employee acting in the performance of his duty.

Defendant argues that because the jury found him not guilty of battery of Deputies Noel and Talley, the first deputies to attempt to subdue him, the evidence contains a judicial finding that his actions did not constitute a battery prior to Captain

9

Alleman's contact with him. From that assertion, he concludes that there is a judicial finding of no intent to batter the deputies, and that his actions consisted of resisting the deputies, not battery. He adds that battery of a correctional facility employee is a general intent crime. As such, Defendant argues that he was trying to get away from a painful substance, the pepper spray, and avoid an electric shock from the shield. Accordingly, he maintains that he did not have the wherewithal to have the general intent to batter Captain Alleman.

Specific intent is not an element of battery of a correctional facility employee. *See* La.R.S. 14:34.5 As noted in *State v. Elliot*, 00-2637, p. 4 (La.App. 1 Cir. 6/22/01), 809 So.2d 203, 205-06 (footnote omitted):

> Battery of a correctional facility employee is a general intent, rather than specific intent, crime. The offense requires neither the infliction of serious bodily harm nor the intent to inflict serious injury.

Further, the supreme court in *State v. Kennedy*, 00-1554, p. 10 (La. 4/3/01), 803 So.2d 916, 923, stated, "General criminal intent exists 'when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act.' La.Rev.Stat. 14:10(2)."

After considering the totality of the circumstances, we find that the evidence was sufficient to meet the standard of proof beyond a reasonable doubt that Defendant had the general intent to commit, the battery of a correctional facility employee, namely Captain Alleman. There is no dispute that Defendant knew that Captain Alleman was a correctional facility employee acting in the performance of her duty, that she was injured as a result of Defendant's actions and that she did not

10

consent to same. Thus, to determine whether Defendant intended to batter Captain Alleman, as opposed to simply resisting the restraint chair, the record must show that he must have adverted to the prescribed criminal consequences, the battery of Captain Alleman, as reasonably certain to result from his actions.

Warden Wiltz testified that when the deputies tried to put Defendant in the restraint chair, he "went crazy. When I say crazy, he just started swinging, kicking, pushing." Deputy Picard also testified that Defendant started kicking, pushing, swinging his arms, and fighting the deputies. With regard to Defendant's response to Captain Alleman and the electric shield, Deputy Picard stated that Captain Alleman was unable to utilize the shield and that Defendant had pushed the shield, throwing Captain Alleman against the wall. Deputy Picard described the violence of Defendant's physical actions toward Captain Alleman as follows:

> In my experience, this was the worse incident that I've had to, to try to, to get an inmate to comply. He had, he would not listen to any verbal command to stop resisting or to just stop and, and just do as we say. You know, we were giving him verbal orders and I've never had anyone resist so, so much against me in my, my eight, nine years there.

Deputy Noel testified that he saw the Defendant pick up his feet and push the shield and Captain Alleman into the wall.

In Captain Alleman's description of the event, she stated that she was unable to use the shield because one or two deputies were with Defendant and if they hit it everyone would lose "their coherence." She testified that Defendant was pushing with his foot and that she "got pushed back in the corner with the shield which caused me to be twisted and I got, messed up my arm." As a result she had to

11

be checked out in St. Martin Hospital where it was determined that she had a sprained arm, and she had to wear a brace for a while.

Considering the violent nature of Defendant's actions as described by the deputies and Captain Alleman, we find that the jury could have reasonably found beyond a reasonable doubt that he must have known that Captain Alleman would be battered as a result of his actions. For the above reasons, this assignment of error lacks merit.

**EXCESSIVE SENTENCE**

In his second and third assignments of error, Defendant argues that he was sentenced for a crime of which he was not convicted, and thus, his sentence is excessive. The bill of information charged Defendant with three counts of battery of a correctional facility employee, a violation of La.R.S. 14:34.5. However, Defendant contends that La.R.S. 14:34.5 contains two offenses, a general misdemeanor charge and a felony charge of battery of a correctional facility employee, and complains that the bill does not identify the offense for which he was charged. Further, he asserts that the jury was instructed as to the misdemeanor offense and found him guilty of same. As such, Defendant maintains that the jury found him not guilty of the felony offense since its finding, as instructed, on the lessor offense acquits him of the greater offense.

In its opposition, the State argues that the jury charge included only relevant portions of the crime and statute under subpart (A). Further, the State maintains that only the sentencing provisions as they relate to Defendant's status as an inmate or non-inmate are included in subpart (B). Accordingly, the State asserts

12

that subpart (B) need not be charged to the jury and that the definition of the crime read to the jury applies to both La.R.S. 14:34.5(B)(1) and (B)(2).

Louisiana Revised Statutes 14:34.5 reads:

A. (1) Battery of a correctional facility employee is a battery committed without the consent of the victim when the offender has reasonable grounds to believe the victim is a correctional facility employee acting in the performance of his duty.

(2) For purposes of this Section, "correctional facility employee" means any employee of any jail, prison, correctional facility, juvenile institution, temporary holding center, halfway house, or detention facility.

(3) For purposes of this Section, "battery of a correctional facility employee" includes the use of force or violence upon the person of the employee by throwing feces, urine, blood, saliva, or any form of human waste by an offender while the offender is incarcerated and is being detained in any jail, prison, correctional facility, juvenile institution, temporary holding center, halfway house, or detention facility.

B. (1) Whoever commits the crime of battery of a correctional facility employee shall be fined not more than five hundred dollars and imprisoned not less than fifteen days nor more than six months without benefit of suspension of sentence.

(2) If at the time of the commission of the offense the offender is under the jurisdiction and legal custody of the Department of Public Safety and Corrections, or is being detained in any jail, prison, correctional facility, juvenile institution, temporary holding center, halfway house, or detention facility, the offender shall be fined not more than one thousand dollars and imprisoned with or without hard labor without benefit of parole, probation, or suspension of sentence for not less than one year nor more than five years. Such sentence shall be consecutive to any other sentence imposed for violation of the provisions of any state criminal law.

At trial, the jury was charged as follows:

Battery on a correctional facility employee is defined as follows. I'm sorry, the defendant is charged with three counts of battery on a correctional facility employee. The alleged victims are (1) Captain Marjorie Alleman, (2) Deputy Lee Allen Noel, and (3) Deputy Gary Tally. Battery on a correctional facility employee is a battery committed

13

without the consent of the victim when the offender has reasonable grounds to believe the victim is a correctional facility employee acting in the performance of his duty. A correctional facility employee means any employee of any jail, prison, correctional facility, juvenile institution, temporary holding center, halfway house or detention facility.

Sentencing is not a function of the jury. It is the duty and responsibility of the Court. However, in order to assure that you are fully advised of the law, I have chosen to inform you of the penalty provided by the Statute. If the defendant is found guilty of battery on a correctional facility employee, the Court shall impose the fine of not more than one thousand dollars and imprison the defendant, with or without hard labor, without benefit of parole, probation, or suspension of sentence for not less than one year nor more than five years. Such sentence shall be consecutive to any other sentence imposed for violation of the provisions of any state criminal law.

Thus, in order to convict a defendant of battery on a correctional facility employee you must find (1) that the defendant intentionally committed a battery without the consent of the victim, and (2) the defendant had reasonable grounds to believe the victim was a correctional facility employee acting in the performance of his duties. If the State has proven each and every one of these essential elements of the crime beyond a reasonable doubt, it is your duty to return a verdict of guilty.

It is clear that the jury charge reflects that the jury was instructed on the elements of the crime as set forth in La.R.S. 14:34.5(A), as well as the penalty provision for an inmate as provided in La.R.S. 14:34.5(B). We disagree with Defendant that there are two different offenses set forth in La.R.S. 14:34.5. Rather there are two possible penalties, depending on the custody of the offender. The trial court was not required to instruct the jury on the sentencing provisions, but chose to fully advise the jury as to the penalty provision for inmates found in La.R.S. 14:34.5(B)(2). The jury was not instructed as to the penalty provision for a non-inmate or what Defendant refers to as a misdemeanor offense. Likewise, there is no

14

evidence in the record which supports his argument that the jury found him guilty of a misdemeanor charge.

Additionally, as provided in La.Code Crim.P. art. 801(C),

A party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error. The nature of the objection and grounds therefor shall be stated at the time of objection. The court shall give the party an opportunity to make the objection out of the presence of the jury.

Because Defendant did not object to the jury charge, he may not raise the alleged error for the first time on appeal.

With regard to Defendant's excessive sentence claim, he did not make an oral motion for reconsideration of his sentence or file a written motion to reconsider his sentence. According to La.Code Crim.P. art. 881.1, failure to make or file a motion to reconsider sentence precludes a defendant from raising on appeal any objection to the sentence. When the record does not indicate that any objection was made regarding sentencing, the defendant is precluded from appealing his sentence. *State v. Williams*, 01-998 (La.App. 3 Cir. 2/6/02), 815 So.2d 908, *writ denied*, 02-0578 (La. 1/31/03), 836 So.2d 59. Although Defendant's sentencing claim is barred pursuant to Article 881.1, we will review his sentence for bare excessiveness in the interest of justice. *State v. Graves*, 01-156 (La.App. 3 Cir. 10/3/01), 798 So.2d 1090, *writ denied*, 02-0029 (La. 10/14/02), 827 So.2d 420.

As previously stated, the possible sentence for an inmate convicted of battery of a correctional facility employee is one to five years. Thus, Defendant's sentence of eighteen months was much less than the maximum sentence allowed and only six months greater than the minimum sentence of one year. Additionally, he did

15

not receive a fine as mandated by La.R.S. 14:34.5(B)(2).  As such, we cannot say that Defendant's sentence of eighteen months is excessive as it does not shock our sense of justice.  Accordingly, this assignment of error lacks merit.

## CONCLUSION

Defendant's conviction and sentence is affirmed.  However, the trial court is directed to inform him of the correct prescriptive period for filing for post-conviction relief by sending appropriate written notice to him within ten days of the rendition of this opinion.  Additionally, the trial court is further instructed to file written proof of such notice in the record of these proceedings.

**AFFIRMED WITH INSTRUCTIONS.**